**H. K. H. Development Corp., an Illinois Corporation, Plaintiff-Appellee, v. The Metropolitan Sanitary District of Greater Chicago, a Municipal Corporation, et al., Defendant-Appellant.**

**Gen. No. 49,362.**

First District, Third Division.
February 13, 1964.
Rehearing denied March 9, 1964.

George A. Lane, of Chicago (Morris Kaplan and Fred Herzog, of counsel), for appellant.

Arvey, Hodes & Mantynband, of Chicago (Louis M. Mantynband, Sidney R. Zatz, J. Herzl Segal and Richard J. Troy, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This is an interlocutory appeal by the defendant, The Metropolitan Sanitary District of Greater Chicago, from an order granting a temporary injunction to the plaintiff, the H. K. H. Development Corporation. The injunction restrained the Sanitary District from interfering with the use of certain land it had leased to the plaintiff.

The Sanitary District, in 1950, leased two parcels of land for 20 years to the Thomas McQueen Company. In 1961 the term of the lease was extended from 20 to 60 years, with an option to renew for 49 additional years; the lease was amended to permit an additional use of the land, and the District consented to the assignment of the lease, as amended, to the plaintiff. Also in 1961, the District leased more of its acres to the plaintiff for a period of 50 years with an option for a further 49-year term.

In May 1963 the Board of Trustees of the Sanitary District passed an order cancelling both leases and

directing the plaintiff to surrender possession of the premises. In June the plaintiff commenced the present action requesting a declaratory judgment to the effect that the leases were valid and that the cancellation of them was null and void. The complaint stated that the plaintiff had performed its obligations under the leases, had paid its rent, was in the process of developing the land as an industrial area and had spent in excess of $50,000 in grading, filling, laying out sewer and water mains, and in otherwise improving the site, and intended to spend $150,000 more in preparing the land for this purpose. An injunction was prayed for enjoining the District from ousting, attempting to oust, or interfering with the plaintiff's peaceable possession of the tracts of land described in the two leases.

The motion for injunction was continued generally, the defendant was given time to answer or plead and, by agreement of the parties, the order provided that nothing would be done to change the status of the property until the case was concluded.

In October 1963, the plaintiff filed a petition for a rule to show cause charging that the District had violated the agreed order. It followed this with a supplement to its complaint which renewed the request for an injunction based upon the following averments: (1) that under the amendment to its lease it was permitted to conduct manufacturing and to store dry and liquid materials incidental thereto; (2) that since filing the complaint it had undertaken the preparation of top dressing for lawns, parks and golf courses; (3) that air-dried sludge was a substantial ingredient of the product being manufactured; (4) that it had been accumulating this ingredient on lots 109 and 109A of the leased premises and (5) that on September 30th the District stopped the trucks which were delivering the sludge and stationed police officers on the lots to prevent further unloading.

48

The principal question confronting the court at the hearing on the injunction was whether the plaintiff was entitled to place dried sludge on the leased property for the purpose stated in the supplemental complaint: future use in the manufacture of fertilizer. Inasmuch as the supplemental complaint related specifically to Lots 109 and 109A which were part of the McQueen lease of 1950, this is the lease which the court had to construe in arriving at its conclusion.

The following is the pertinent part of the McQueen lease:

"(3.05) (Use of Premises.) It is understood that the said demised premises is to be used by said Lessee for the purpose of depositing thereon excavated materials consisting of top soil, sand, gravel, glacial drift and rock, broken concrete and masonry, and solid inorganic materials, as hereinafter set forth. Under no circumstances, however, shall any refuse, garbage or domestic or industrial waste be so deposited thereon; . . ."

In 1961, when the lease was assigned to the plaintiff, it was amended as follows:

". . . paragraph (3.05) (Use of Premises) in the hereinabove described lease be modified and amended by adding the following words 'and for the storage of dry and liquid materials, manufacturing and such other purposes as shall be incident thereto.'"

The District contended that placing dried sludge on the property was not permissible under the provision of the lease prohibiting the deposit of "domestic or industrial waste." The plaintiff contended that it was permissible under the amendment to the lease allowing storage of "dry and liquid materials."

49

In support of its contention that sludge was waste, the District called as a witness its Chief Engineer. He testified that sludge was a residue of domestic and industrial waste, but he also testified that it could be used as fertilizer if it were combined with chemicals or with other additives and black soil. The District places great stress on this testimony and argues that since it was the only evidence before the court on the most important factual issue involved, the court erred in not finding that sludge was waste and within the prohibition in the lease, and erred in granting the injunction contrary to the prohibition.

The plaintiff objected to the engineer's testifying and to his testimony. The objections were well founded and should have been sustained. At the time the testimony was offered the defendant had not answered the complaint. It had filed only a motion to dismiss which had neither been argued nor set for argument. Under these circumstances the court could not consider the testimony and we must disregard it too. It is the law in this State that on a motion for a temporary injunction, where the defendant has not answered the complaint and where the issues have not been joined, the court should not receive or consider evidence or affidavits. After an answer is filed denying the allegations of the complaint, either party may introduce testimony or affidavits to support the complaint or answer. Dunne v. County of Rock Island, 273 Ill 53, 112 NE 342; Sunbeam Corp. v. Richard's Appliances, Inc., 8 Ill App2d 238, 131 NE2d 128; Goldblatt Bros., Inc. v. Sixty-Third & Halsted Realty Co., 338 Ill App 543, 88 NE2d 100; Crown Bldg. Corp. v. Monroe Amusement Corp., 326 Ill App 430, 62 NE2d 32; McNevin v. Stoolman, 235 Ill App 449. In the Dunne case the court said:

"It is the office of an answer to deny the allegations of a bill in equity or to set up some affirmative matter as a defense, and it is the office of a

demurrer to test the sufficiency of a bill upon its face. Issues of fact should be made up before any evidence is heard, and if only questions of law are to be raised, the bill should be taken as true as to all facts well pleaded and as stating the whole case for the court's consideration until the facts are denied by answer or further facts are pleaded by the defendant as matters of defense to the bill."

In the Crown Bldg. case the court followed the rule announced in the Dunne case and disregarded affidavits and testimony introduced by the defendant before it filed an answer to the complaint. In the Sunbeam case the court stated:

"The declared rule of this State is that the court has no right to consider affidavits either on a motion to dissolve an injunction before any answer or pleadings are filed by the defendants, or any affidavit or evidence offered by plaintiff in support of the motion for preliminary injunction, when no answer is on file."

 The motion for the temporary injunction had to be determined solely upon the verified complaint and the verified supplement to the complaint. Sunbeam Corp. v. Richard's Appliances, Inc., supra; Lee v. Morris, 326 Ill App 555, 62 NE2d 573; Moss v. Balch, 320 Ill App 135, 49 NE2d 801. Since the facts in the complaint and its supplement were uncontroverted, the court had to decide whether they and the applicable law were sufficient to sustain the plaintiff's motion. The complaints did not have to make out a case which would entitle the plaintiff to the declaratory judgment prayed for, nor did they have to be of the character needed to obtain a final and permanent injunction. It was only necessary that they raised a fair question as to the existence of the right claimed, led the court to believe that the plaintiff probably would be entitled to the relief prayed for if its proof

51

should sustain its allegations, and made it appear advisable that the positions of the parties should stay as they were until the court had the opportunity to consider the case on its merits. Nestor Johnson Mfg. Co. v. Goldblatt, 371 Ill 570, 21 NE2d 723; City of Joliet v. Lohman, 32 Ill App2d 125, 177 NE2d 260; O'Brien v. Matual, 14 Ill App2d 173, 144 NE2d 446. The complaints did this. They were sufficient to sustain the motion for a temporary injunction, and the amendment to the lease—which expanded the right of the lessee to permit the use of the property for manufacturing purposes and to permit the storage of dry and liquid materials—was broad enough to encompass the plaintiff's activities.

The District argues that the injunction, which enjoined it from interfering with the placement of dried sludge and from interfering with the plaintiff's proposed manufacturing operations, rewrote the lease of the parties and ignored the agreed order entered in June 1963 that nothing would be done to change the status of the property. At the time the first complaint was before the court in June, the plaintiff alleged that it was developing the leased land as an industrial area. There is nothing to show that it persisted in this or that the development continued in any way after the order was entered. The District says that the land was vacant in June and not changing the status meant keeping it vacant. This is unrealistic. If this is what the order contemplated it meant that the District had won a complete victory over the grieved party at an indecisive preliminary hearing; the plaintiff would continue to pay rent while being forbidden to use the land even for purposes the District acknowledges are permissible. The chancellor, having entered the order, knew what was intended by it, and must have been of the opinion that using the land for the express purposes stated in the lease was not a violation of the agreed order.

The District calls attention to a provision in the lease which requires the approval of the District's Chief Engineer as to whether materials deposited on the premises were "suitable for fill," and points out that the plaintiff did not obtain and does not allege having obtained such approval. The District, however, overlooks the uncontradicted allegation in the supplemental complaint that the material was being placed on the land for manufacturing purposes, and not for fill.

Other issues are presented by the defendant's brief and many were raised in its motion to dismiss. Among these are (a) that the amendments to the McQueen lease were never executed; (b) that the two leases are void because the District has no power to grant long-term leases of District land dedicated to the fulfillment of its public functions, and that an order of the Board of Trustees, passed in 1927, stated that this particular land was needed by the District for its own purposes and could not be leased unless the lease was subject to cancellation upon reasonable notice, and that the two leases in question did not contain such a provision; (c) that the McQueen lease was illegal in that it was for more than 99 years and this violated section 327 of chapter 42, Ill Rev Stats, 1961, and (d) that the 1961 lease was invalid and contrary to the same statute in that one of the lots contained in the lease could not be leased for more than five years without the approval of the Director of the Department of Public Works and Buildings of the State of Illinois and that the District had not obtained this approval.

██ ██ The time for settling these issues is not on a motion for a preliminary injunction or on an appeal from such an injunction, but rather at the hearing on the motion to dismiss or during the trial of the case when both parties will have the opportunity to produce evidence in support of their contentions. The ultimate issues of a controversy are usually not brought before

a reviewing court by an interlocutory appeal, but are reserved for the trial. Shatz v. Paul, 7 Ill App2d 223, 129 NE2d 348. It is not the purpose of a temporary injunction to determine controverted rights or to decide the merits of a case. An interlocutory injunction is granted before the hearing of a case for the purpose of preventing a threatened wrong or the further perpetration of an injury. John Deere Co. of Moline v. Hinrichs, 36 Ill App2d 255, 183 NE2d 309. The temporary injunction issued in the case will in nowise prevent the defendant from having a hearing on its motion to dismiss and will not impede a trial on the full issues of the case if it decides to answer the complaints.

██ ██ The granting of a temporary injunction is subject to the sound discretion of the trial court, and unless the discretion has been abused the reviewing court will not set aside the order. Weingart v. Weingart, 23 Ill App2d 154, 161 NE2d 714. In the present case the complaint and supplement state a prima facie cause of action and it cannot be said that the trial court abused its discretion in granting the temporary injunction. In fact, the court was very judicious. Steps were taken to safeguard the District and to keep the court informed. The plaintiff was required to post a penal bond of $100,000, and to make sure that the plaintiff was storing the dried sludge and not dumping it, the plaintiff was ordered to report its progress with the contemplated manufacturing project within six months of the date of the order. The order further provided that in the event substantial progress was not made, the injunction would be reviewed by the court.

The order of the trial court is affirmed.

Affirmed.

SCHWARTZ, P. J. and SULLIVAN, J., concur.