Seay & Thomas, Inc., as Agents and LaSalle National Bank, as Trustee Under Trust Agreement Dated July 16, 1962 and Known as Trust No. 29744, Plaintiffs-Appellees, v. Kerr's, Inc., a Delaware Corporation, and Blum's-Vogue, Inc., an Illinois Corporation, Defendants-Appellants.

Gen. No. 50,105.

First District, First Division.

April 26, 1965.

Rehearing denied May 20, 1965.

[black redaction bars]

Merwin S. Rosenberg, of Chicago, for appellants.

Friedman, Koven, Salzman, Koenigsberg, Specks & Homer, of Chicago (Robert S. Jacobs and Laurance P. Nathan, of counsel), for appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

This is an interlocutory appeal by the defendants, Kerr's, Inc., and Blum's-Vogue, Inc., from an order granting a temporary injunction to plaintiffs, Seay & Thomas, Inc., and LaSalle National Bank, restraining defendants and plaintiffs from "removing or altering or causing the removal or alteration, of iron gate located outside the main door on the ground floor of the premises located at 630 South Michigan Ave., Chicago, Illinois, leased by plaintiffs to defendants." No injunction bond was set.

Seay & Thomas, as agents for, and LaSalle National Bank, as trustee and owner of certain possessory rights to the land and 14-story building at 624–630 South Michigan Avenue, Chicago, entered into a written lease with Kerr's on November 17, 1961, relating to the first, second, third, fourth and a portion of the

fifth floors for a term ending on December 31, 1964. On November 18, 1961, Kerr's, with plaintiffs' consent, assigned all rights under the lease to Blum's and guaranteed Blum's performance of the lessee's obligations thereunder. Blum's took possession of the demised premises and now remains in possession. There is no agreement to renew or extend the lease beyond December 31, 1964.

On September 9, 1964, plaintiffs filed a verified complaint against the defendants alleging that a controversy arose with Blum's-Vogue as to the right of Blum's to remove certain items from the demised premises upon the termination of the lease. Plaintiffs charged that Blum's had removed or was about to remove the following items:

Ornamental light fixtures and *ornamental iron gate located outside entrance way,* light fixtures, doors;

Marble floors, marble walls and marble pillars;

Parquetted floors, tile floors, mirrors;

Air condition units, equipment and ducts; wall panelling and fireplaces; wall showcases and safes; chandeliers;

Marble pillar facings and wall facings;

Bank partitions;

Elevator, elevator cage, elevator motors, fixtures and elevator landings;

Partitions in general office area;

Walls, ceilings, mirrors and showcases in jewelry rooms and dressing rooms.

These items, they charged, were situated on and affixed to the leased premises prior to and at the date

and lease commenced; that they were an integral part of the real estate, and as such were plaintiffs' property to remain on the premises at the expiration of the lease; and that the removal of said items would materially injure the premises and cause plaintiffs irreparable harm. Plaintiffs prayed that the described items be declared to be their property, to remain on the premises; and that an injunction issue restraining said removal pending the final determination of the case.

The lease was attached to the complaint and the relevant terms thereof are the following sections:

"9. . . . At the termination of this lease by lapse of time or otherwise, the Lessee shall return the premises in as good condition as when the Lessee took possession, ordinary wear and loss by fire excepted, failing which the Lessor may restore the premises to such condition and the Lessee shall pay the cost thereof. The Lessee may remove any floor covering laid by the Lessee, provided, (a) the Lessee also removes all nails, tacks, paper, glue, bases and other vestiges of the floor covering, and restores the floor surface to the condition existing before such floor covering was laid, or (b) the Lessee pays to the Lessor, upon request, the cost of restoring the floor surface to such condition. If the Lessee does not remove the Lessee's floor coverings, radiator covers, venetian blinds, window ventilators and other like equipment from the premises prior to the end of the term, the Lessee shall be conclusively presumed to have abandoned the same and title thereto shall thereby pass to the Lessor without payment or credit by the Lessor to the Lessee.

10. . . . All additions, hardware, non-trade fixtures and all improvements, temporary or per-

manent, in or upon the premises, whether placed there by the Lessee or by the Lessor, shall, unless the Lessor requests their removal, become the Lessor's property and shall remain upon the premises at the termination of this lease by lapse of time or otherwise without compensation or allowance or credit to the Lessee. If, upon the Lessor's request, the Lessee does not remove said additions, hardware, non-trade fixtures and improvements, the Lessor may remove the same and the Lessee shall pay the cost of such removal to the Lessor upon demand. If the Lessee does not remove the Lessee's furniture, machinery, trade fixtures and all other items of personal property of every kind and description from the premises prior to the end of the term, however ended, the Lessee shall be conclusively presumed to have conveyed the same to the Lessor under this lease as a bill of sale without further payment or credit by the Lessor to the Lessee."

Blum's verified answer and the subsequently filed verified answer of Kerr's: (a) Denied that a controversy existed, but contended that the relevant terms of the lease contain lessee's rights and obligations with respect to the removal of various items contained in the demised premises. (b) Admitted that Blum's had intended to or had the right to remove only those items described in the lease "which constitute trade fixtures and other permissibly removable personal property (hereinafter collectively called 'trade fixtures'), to-wit:

All lighting fixtures;
Mirrors;
Air conditioning units (exclusive of ducts);
Showcases;
Racks;

396

Chandeliers;
Partitions; and
*All other items commonly referred to as trade fixtures contained in and upon the premises."*

(c) *As to all other items* described in the complaint, "said other items have neither been removed nor does *it* intend to remove the same." (d) Admitted that the items described in the complaint were situated on the demised premises but "denies that any of the *trade fixtures* are or were at any time affixed to the demised premises." (e) Stated that Blum's and its predecessors, by virtue of prior leases with plaintiffs' predecessors, had been in continuous occupancy of the leased premises long prior to the term of the lease; and, in connection with such continuous occupancy, defendants' predecessors had installed therein the *trade fixtures listed in defendants' answers* (except a certain air conditioner, which defendant installed); that Blum's was the true and *lawful owner of the items listed in the answer,* having derived title to such items through mesne bills of sale; that the items did in fact constitute trade fixtures and personal property readily removable, and not affixed or integrated into or comprising part of plaintiffs' real estate; that under the last sentence of section 10 of the lease, Blum's was entitled to remove all of the above items.

The answers further denied that the removal of said trade fixtures would materially injure the premises; that plaintiffs would suffer any irreparable harm; and that the remedy at law was adequate.

Defendants prayed that if declaratory relief was granted, the court determine that Blum's owns the trade fixtures and all other personal property and is entitled to remove the same; and that the court deny plaintiffs relief by way of injunction.

397

On September 11, 1964, plaintiffs moved for a temporary injunction to enjoin Blum's from remodeling or altering, or causing the removal or alteration of any of the following items:

(1) Ceilings, walls, parquetted floors, built-in wall showcases and light fixtures and equipment in gift room and jewelry room on first floor;

(2) Marble pillars, marble floors and marble wall facings at elevator lobby on first floor;

(3) Marble wall facings and marble pillar facings on remainder of first floor;

(4) Doors, jambs, door bucks and built-in ornamental door fixtures in second floor fitting rooms;

(5) Built-in fireplaces on second and third floors;

until further order of court. Said motion was pursuant to notice supported by their verified complaint and affidavits to support the charge of removal of the items and the irreparable damage caused thereby. On September 21, 1964, the parties agreed that the motion for preliminary injunction be withdrawn without prejudice.

On October 20, 1964, plaintiffs served notice and made motion for the issuance of a temporary injunction, restraining defendants from removing or altering or causing the removal or alteration of the iron gate located outside of the main door on the ground floor of the leased premises. The court then entered the following order which is the subject of this appeal:

"This cause coming on to be heard on the motion of plaintiffs for a temporary injunction, and said defendants having appeared by their counsel, and the Court being fully advised in the premises;

It is hereby ordered that a writ of temporary injunction be issued by the Clerk, to be in full force and effect without further order of this court and without bond, restraining and enjoining plaintiffs and defendants Kerr's, Inc. and Blum's Vogue, Inc., and their respective agents, officers and employees, from removing or altering, or causing the removal or alteration, of iron gate located outside the main door on the ground floor of the premises located at 630 South Michigan Ave., Chicago, Illinois leased by Plaintiffs to Defendants."

The points raised by defendants on this appeal are "that the granting of the order was not justified (a) by the theory, and (b) by the language of plaintiffs' complaint; (c) under the state of the record, after both defendants had filed verified answers; (d) because not timely made, and made after a prior motion of plaintiffs for temporary injunction, supported by affidavits had been withdrawn; (e) because the injunction was issued without bond; (i) without recital of due cause, and (ii) without plaintiffs' complaint justifying waiver of a bond, or setting forth due cause."

Plaintiffs contend that the allegations in the complaint support the injunctional order and are not controverted by defendants' answers, and it was within the sound discretion of the trial court to enter the order without bond, to maintain the parties in status quo and preserve the subject matter of the litigation pending further proceedings.

The question posed by this appeal is whether the issuance of the temporary injunction was an abuse of discretion by the trial court. It is well settled law in Illinois that the trial court is vested with large discretionary power in granting an order for a tempo-

rary injunction and unless the reviewing court finds that the discretion has been abused the order will not be set aside. The effect of section 78 of the Civil Practice Act relating to appeals to the appellate court from interlocutory orders concerning injunctions, is to permit a review of the exercise of the discretion lodged in the chancellor in order to determine whether the interlocutory order probably was necessary to maintain the status quo and preserve the equitable rights of the parties, and unless the appellate court finds that the chancellor's discretion has been abused the interlocutory order will not be reversed or set aside. Weingart v. Weingart, 23 Ill App2d 154, 161 NE2d 714 (1959); O'Brien v. Matual, 14 Ill App2d 173, 144 NE2d 446 (1957).

■ Plaintiffs, in seeking the temporary injunction, need not make out a case which would entitle them to the declaratory judgment prayed for, nor did their complaint have to be of the character needed to obtain a final and permanent injunction. It was only necessary that the complaint raise a fair question as to the existence of the right claimed, lead the court to believe that the plaintiffs probably would be entitled to the relief prayed for if its proof should sustain its allegations, and make it appear advisable that the positions of the parties should stay as they were until the court had the opportunity to consider the case on its merits. H. K. H. Development Corp. v. Metropolitan Sanitary Dist. of Greater Chicago, 47 Ill App2d 46, 196 NE2d 494 (1964); Twin City Barge & Towing Co. v. Licensed Tugman's & Pilots' Protective Ass'n of America, 48 Ill App2d 1, 197 NE2d 749 (1964); Capitol Records, Inc. v. Vee Jay Records, Inc., 47 Ill App2d 468, 197 NE2d 503 (1964); O'Brien v. Matual, 14 Ill App2d 173, 144 NE2d 446.

Defendants argue that a temporary injunction cannot be predicated solely upon the allegations of plain-

400

tiffs' complaint where material factual issues are controverted and the answers raise a complete defense. Defendants cite the cases of Lipkin v. Burnstine, 18 Ill App2d 509, 152 NE2d 745 (1958); McFetridge v. First Commercial Bank, 28 Ill App2d 512, 171 NE2d 791 (1961); Madison Chemical Corp. v. Resnick, 35 Ill App2d 372, 183 NE2d 3 (1962), but they do not come within the rule there enunciated.

■ Admittedly, it is not the purpose of a temporary injunction to determine controverted rights or to decide the merits of the case. The question narrowly presented here is whether defendants denied the material averments of the complaint relating to the iron gate.

■ Plaintiff's verified complaint alleged the threatened removal by Blum's of various listed items from the demised premises, including the iron gate in question; that such items are an integral part of the real estate and are the property of plaintiffs; and that removal of the designated items would materially injure the building and cause irreparable harm to plaintiffs for which they have no adequate remedy at law. Plaintiffs further relied on section 10 of the lease which provided that "all . . . non-trade fixtures and all improvements, temporary or permanent, in or upon the premises, whether placed there by the Lessee or the Lessor, shall . . . become the Lessor's property and shall remain upon the premises at the termination of this lease by lapse of time or otherwise. . . ." If uncontroverted, such allegations are taken as true for purposes of the motion (Kabureck v. Stookey, 1 Ill App2d 181, 116 NE2d 900 (1954)) and are sufficient to establish a prima facie right to the relief prayed for in the complaint.

Defendants filed verified answers specifically alleging that certain of the listed items in the complaint were trade fixtures. Only with respect to those specifi-

cally listed trade fixtures and "all other" trade fixtures or "readily removable personal property" did defendants deny affixation, integration, ownership by plaintiffs, and that irreparable harm would be caused by their removal for which plaintiffs had no adequate remedy at law.

Defendants did not specifically include the iron gate in their list of trade fixtures, and we cannot determine from their answer whether the iron gate is within the class of items referred to by them as other trade fixtures, or readily removable personal property. Defendants admitted that they have neither removed nor did they intend to remove any of the items described in the complaint which were not included in their enumeration of trade fixtures. We must conclude from the foregoing that defendants failed to controvert the material averments of the complaint and did not by their answer deny that the iron gate was integrated and affixed to the premises, that it was owned by plaintiffs, and that its removal would cause irreparable injury to the premises for which no adequate remedy at law is available.

The trial court, therefore, did not abuse its discretion in not hearing evidence where there was no material issue of fact relating to the item in controversy, and it was justified in issuing the order based upon the state of the pleadings and the status of the parties.

The effect of the order was to maintain the status quo pending trial of the cause, and to eliminate the danger that a portion of the subject matter of the litigation might have been removed or destroyed. Where the substance of litigation is a physical object, which defendant may destroy if an injunction is not immediately issued, the courts may exercise great discretion, and in such situation, the injunction is

properly allowed even where there may be serious doubt as to the ultimate success of plaintiffs. Chicago Motor Coach Co. v. Budd, 346 Ill App 385, 105 NE2d 140 (1952).

■ That the trial court was motivated by a desire to maintain the status quo is evidenced by the fact that both plaintiffs and defendants were enjoined not only from removing but also altering the iron gate, even though the complaint and motion for temporary injunction did not include a prayer for relief in such terms. Defendants argue that plaintiffs cannot justify the enlargement of the interlocutory injunction order to include matters not covered by the allegations or specific prayer of the complaint under the prayer for general relief. They rely on Kelly v. Kelly, 293 Ill 169, 127 NE 377 (1920); and O'Brien v. Eustice, 298 Ill App 510, 19 NE2d 137 (1939). The record does not support defendants' position. Considering the allegations and the prayer for general relief, the court could properly protect the subject matter of the litigation pending a determination of the cause on the merits, and restrain both plaintiffs and defendants from taking any action with respect to the iron gate. The order was justified and the prayer for general relief was consistent with the purpose for which the special relief was requested.

The relative inconvenience to the parties further supports the entry of the order. There is nothing in the record to indicate that defendants would be damaged in any way by the order, whereas, by the complaint, removal of the iron gate would cause irreparable harm to the premises. The request for relief was timely and, under the circumstances, the court was warranted in ascertaining the last peaceful status of the parties and preserving such until the issue of the right to the iron gate could be determined on the merits.

For the reasons stated the trial court did not err in granting the order for temporary injunction.

However, we agree with defendants that the injunctional order without bond is not supported by the record. Section 9 of the Injunction Act (Ill Rev Stats 1963, c 69, § 9) requires that ". . . before an injunction may issue, the plaintiff shall give bond . . . as may be required by the court or judge: Provided, bond need not be required when, *for good cause shown,* the court or judge is of the opinion that the injunction ought to be granted without bond." (Emphasis ours.) Although the issuance of an injunction without bond rests largely in the discretion of the court, the record must show "good cause" for the proper exercise of that discretion. The record in the instant case is silent as to the reason for not requiring the bond. We, therefore, affirm the restraining order and remand the cause to the trial court for hearing on the bond.

Affirmed and remanded with directions.

BURMAN, P. J. and MURPHY, J., concur.