**H.K.H. Development Corp., an Illinois Corporation, Plaintiff-Appellee, v. The Metropolitan Sanitary District of Greater Chicago, a Municipal Corporation, et al., Defendants-Appellants.**

Gen. No. 52,188.

First Judicial District.

June 5, 1968.

Rehearing denied July 12, 1968.

227

Allen S. Lavin, of Chicago (Fred Herzog, of counsel), for appellant.

Arvey, Hodes & Mantynband, of Chicago (Louis M. Mantynband, J. Herzl Segal, and Richard J. Troy, of counsel), for appellee.

ALLOY, P. J.

This is an appeal from a final decree entered in an action instituted as an action for declaratory judgment to secure a judicial determination that two leases between plaintiff, H.K.H. Development Corp. (hereinafter called "H.K.H."), as Lessee, and defendant, Metropolitan Sanitary District of Greater Chicago (hereinafter called "Sanitary District"), as Lessor, were valid and binding upon the Sanitary District. The Sanitary District in 1950

leased two parcels of land for 20 years to the Thomas McQueen Company (hereinafter referred to as "McQueen lease"). In 1961, the term of the lease was extended from 20 to 60 years, with an option to renew for 49 additional years. Such lease was contemporaneously amended to permit an additional use of the land and there was an assignment to plaintiff of the lease, as amended, which the trial court found had been consented to by the Sanitary District. At the same time in 1961, the Sanitary District leased more of its acres to the plaintiff H.K.H. (hereinafter referred to as the "H.K.H. lease") for a period of 50 years, with an option for a further 49-year term. In May of 1963, the Board of Trustees of the Sanitary District passed an order canceling both leases and directing plaintiff to surrender possession of the premises.

In the course of the trial, the court, following a hearing, granted the H.K.H. motion for a temporary injunction restraining the Sanitary District from interfering with plaintiff's use of the property. This Court affirmed such order on appeal (H.K.H. Development Corp. v. Metropolitan Sanitary Dist. of Greater Chicago, 47 Ill App2d 46, 196 NE2d 494). Following such affirmance, there were extensive hearings before a Master in Chancery. The Master then filed a report finding the issues in favor of plaintiff and as against the Sanitary District, and that the attempted cancellations of the leases were a nullity, and recommending the award of a permanent injunction restraining the ouster of plaintiff. The defendant Sanitary District appeals from such decree. The trial court approved the findings and conclusions of the Master in Chancery and followed the recommendations of the Master in Chancery in entering the decree in this cause. Significant conclusions of the Master in Chancery, among others, were:

(1) that the lease between the Sanitary District and the Thomas McQueen Company was validly entered into;

(2) that the amendments to the McQueen lease were prepared and approved by attorneys and agents of the Sanitary District;

(3) that such amendments were properly approved by the Board of Trustees of the Sanitary District on February 23, 1961; and

(4) that the lease and amendments were valid and binding on the Sanitary District and plaintiff, by reason of the assignment by the McQueen Company to plaintiff of the McQueen lease and the acceptance by plaintiff H.K.H. of the assignment of said lease "as amended" and its agreement "to make all payments and to perform and keep all promises, covenants and agreements and to abide by the terms and conditions of the above described lease" (coupled with the consent of the Sanitary District to said assignment as amended).

The Master also concluded that the McQueen lease, as amended, on February 23, 1961, extending the lease term to October 31, 2010, in granting the lessee an option for an additional 49 years to October 31, 2059, did not amount to a conveyance of an interest in property beyond 99 years by the Sanitary District from the effective date of such amendments, and, therefore, was not in violation of 1961 Illinois Revised Statutes, chapter 42, § 327. That act specifically provided that the Sanitary District may lease to others for a period of time not to exceed 99 years, upon such terms as the Board of Trustees may determine. The Master also concluded that the H.K.H. use of the property conveyed by the McQueen Company was a proper use under the terms of said lease since the deposit of air-dried sludge as an incident to the manufac-

ture of fertilizer was a permitted use under the amended use clause of said lease, and that H.K.H. was not in default in any of the terms and conditions of the McQueen lease.

The Master in Chancery also concluded that the lease between the H.K.H. Development Corp., as Lessee, and the Sanitary District, as Lessor, dated August 3, 1961, was validly entered into between the Sanitary District and the plaintiff pursuant to authority granted by the Board of Trustees on August 3, 1961. The Master based such conclusion in a large measure upon the finding that:

 (a) the minutes of the regular meeting of the Board of Trustees of the Sanitary District on the date referred to, reflect an authorization to the Chairman of the Committee on Finance of the Board and the Clerk of said Board to enter into a lease with plaintiff H.K.H. for a definite period of time at a definite rental schedule for particular uses in accordance with the form of lease approved by the attorney for the Sanitary District, which form of lease was attached to the report to the Board of Trustees from the committee on real estate;

 (b) the executed copy of the lease attached to the complaint was identical in all respects with those elements set forth in the Board authorization of August 3, 1961, with the sole exception of including within the use clause of the lease the following: "Distribution including a truck terminal and other transportation facilities";

 (c) the authorization of August 3, 1961, stated that the form of lease would be printed in a future issue and that the certificate of notary acknowledging the signatures of the Chairman of the Finance Committee of the Board and the Clerk of the Sanitary District recited that both men had

231

acknowledged that they signed, sealed, and delivered the instrument in their respective capacities, and caused the corporate seal of the corporation to be affixed thereto pursuant to authority of the Board; and that the acts of officers of a municipal corporation are presumed to be regular and the burden is on the party seeking to establish the invalidity of the acts to prove otherwise by a preponderance of the evidence;

(d) the lease document attached to the complaint bore the approval of a number of officials of the Sanitary District including the departmental and chief engineer, the real estate manager, the attorney and assistant senior attorney and general superintendent;

(e) a lease document identical in all respects with that which was attached to the complaint was printed in the minutes of the regular meeting of the Board of Trustees of the Sanitary District held on May 3, 1962, immediately preceding the printing of said lease and contained the following legend: "Board order on said lease passed the mtg. of Aug. 3rd, 1961. See page 460 of proc."; and

(f) at the regular meeting of the Board of Trustees of the Sanitary District held on June 14, 1962, the minutes of the meeting of May 3, 1962, were approved as printed.

The Master also found that the H.K.H. lease is not invalid by reason of the failure of either the Sanitary District as lessor or H.K.H. as lessee to obtain prior written consent of the Director of the Department of Public Works and Buildings of the State of Illinois for the leasing of Lot 133 (which is part of the H.K.H. lease) for a term in excess of five years. The statute in question (1961 Ill Rev Stats, c 42, § 327) provides that no sales . . . or leases for periods in excess of five

years of certain real estate should be made by any Sanitary District without approval in writing of the Director of the Department of Public Works and Buildings of the State of Illinois. The Master's conclusion in this respect is stated to be based upon the following:

(a) that the statute does not explicitly require prior consent of the directors;

(b) that H.K.H. introduced into evidence a copy of a letter indicating that the Director of the Department of Public Works and Buildings of the State of Illinois did in fact consent to the leasing of Lot 133 in excess of five years, although such consent was subsequent to the date of the lease;

(c) that the Director of the Department of Public Works and Buildings of the State of Illinois was made a party defendant to the proceedings and was on notice of the contentions raised by the Sanitary District with respect to the lot but took no action to join in the request of the Sanitary District to declare the lease void; and

(d) that from the evidence introduced at the hearing it was evident that the Sanitary District at all times failed to adhere to a policy requiring prior written consent of the Director of the Department of Public Works and Buildings for the leasing in excess of five years of the lots mentioned in the section of the statute referred to and that no action was taken against lessees or vendees of parcels referred to in said section from which prior written consent of the Director of the Department of Public Works and Buildings had not been obtained; and that the Sanitary District prior to the filing of the present action and even thereafter (with the exception of the position taken as to the plaintiff) did not require prior written consent of the Director of the Department of Public Works

233

and Buildings as being a condition precedent to the validity of a lease.

The Master also concluded from the evidence that the use of a portion of the property conveyed in the H.K.H. lease, by Material Service Corporation was not a sub-lease by H.K.H. and that H.K.H. was not guilty of un-clean hands by reason of the deposit of air-dried sludge on Lots 109 and 109A of the McQueen lease. The Master further concluded that by reason of the payment by H.K.H. of substantial rents and taxes (more than $65,000 to date) and other improvements to the property made by it, the balance of equities is in favor of H.K.H. and against the defendant Sanitary District. The Master additionally concluded that the Board order of May 9, 1963, purporting to cancel the McQueen lease as amended and the H.K.H. lease, was null and void and that the Board had no legal authority to cancel said leases uni-laterally.

As indicated previously, the trial court of Cook County adopted the recommendations of the Master and ordered the issuance of a permanent injunction as against the Sanitary District enjoining interference with the peaceful possession of the premises by plaintiff under both the McQueen lease and the H.K.H. lease. The court likewise granted plaintiff H.K.H. an additional period of five years to construct certain improvements required by Ar-ticle 6 of the H.K.H. lease.

On appeal in this Court, the Sanitary District chal-lenges both leases on certain specific grounds. As to the McQueen lease, the Sanitary District contends that plain-tiff breached the McQueen lease by dumping sludge on the demised premises. It is contended that the lease con-tained an absolute prohibition against the placing of waste materials on the land and that plaintiff failed to sustain the burden of proof that its intended use of the

sludge which was placed upon the land was for the manufacture of fertilizer. In this connection it is vigorously asserted that the fertilizer story was unsound and that the witness supporting this position had been discredited so that the fertilizer manufacturing contention should have been rejected by the Master in Chancery and the trial court. It is also contended, by the Sanitary District that the McQueen lease was void upon its face as being in violation of the statutory time limitation; that is, as being in excess of 99 years under the provisions of section 327 of chapter 42, 1961 Illinois Revised Statutes. It is further asserted that the McQueen lease amendment was invalid since it was never executed and there was no consideration for such amendment. Defendant also contends that the lease required the approval of the Sanitary District's chief engineer for depositing of any material on the land.

As to the H.K.H. lease, the Sanitary District contends that the lease was never approved by the District Board of Trustees and is, therefore, invalid; that it is also invalid because it encompasses within its scope Lot 133 which could not be leased by the District without the written approval of the Director of the Department of Public Works and Buildings of the State of Illinois; and that plaintiff subleased part of the premises to Material Service Corporation in violation of the lease. It is also contended that the final decree changed the provisions of the lease agreement by postponing the performance of certain lease terms and that plaintiff was not entitled to equitable relief in the action generally.

■ As a Court of review, we are not justified in setting aside the report of a Master in Chancery when approved by the trial court and the court's decree unless the findings and conclusions are contrary to the manifest weight of the evidence (Ginther v. Duginger, 6 Ill2d 474, 485, 129 NE2d 147; La Salle Nat. Bank v. Village of

235

Skokie, 62 Ill App2d 82, 89, 210 NE2d 578). The record before us, while conflicting in many areas and subject to contrary interpretations, is such that we cannot conclude that the substantial findings and conclusions of the Master and the trial court are contrary to the manifest weight of the evidence. It is not a question of whether or not we would come to the same conclusions as we view the record on appeal.

In giving consideration to the questions relating to the McQueen lease, the first issue is whether the storage of air-dried sludge as raw material ostensibly for a fertilizer manufacturing plant or process, constituted a breach of the terms of the McQueen lease. As we indicated previously (H.K.H. Development Corp. v. Metropolitan Sanitary Dist. of Greater Chicago, 47 Ill App2d 46, 196 NE2d 494), the Sanitary District took the position that the storage or dumping of the sludge violated the lease and forcibly prevented further storage or dumping. Under the use provisions in the original lease at Article 3.05, there was an absolute prohibition against the dumping of "waste." This was superseded by an amendment which permitted the "storage of dry and liquid materials" on the demised premises. It was contended by plaintiff, and evidence was offered in support of such contention, that such material was not dumped to be deposited on a permanent basis, but was temporarily placed and stored until ready for use as an incident to a manufacturing purpose. The amendment to the lease expanded the right of lessee to authorize the use of the property for manufacturing purposes and to permit the storage of dry and liquid materials, and was broad enough to encompass plaintiff's activities (H.K.H. Development Corp. v. Metropolitan Sanitary Dist. of Greater Chicago, 47 Ill App2d 46, 52, 196 NE2d 494). While such prior opinion was based simply on plaintiff's pleadings, this issue has now been resolved through the introduction of evidence in this

cause and through the finding of the Master in Chancery and the trial court and the approval thereof by the trial court. Since the Master had the benefit of hearing and observing all of the witnesses who testified and was in a far better position to determine disputed questions of fact than is a court of review, we cannot, in view of the record, state that such finding approved by the trial court was contrary to the manifest weight of the evidence. There was evidence that H.K.H. intended to use the air-dried sludge as a fertilizer ingredient. The Sanitary District has vigorously contended that this plan was a "sham." The Sanitary District theorized that the acquisition of the leases in an area to be traversed by the projected Southwest Expressway, coupled with the fact that one or more of the principals in H.K.H. was interested in removal of air-dried sludge to a nearby location on the McQueen lots in aid of the contractor's obligation to clear areas for the Southwest Expressway, were the real motivating factors rather than any other considerations.

There was evidence introduced both supporting and attacking the program of the use of air-dried sludge as a fertilizer ingredient, and there was serious question as to whether a fertilizer plant of the type referred to by plaintiff could be successful. This, however, is not a matter which can be determined on appeal, since the issue which is before us is whether the Master in Chancery was justified in his determination of such issue, as a question of fact. The only question was whether plaintiff in good faith placed air-dried sludge on Lots 109 and 109A with the intention of using the material as an ingredient for the manufacture of fertilizer. The Master, following the hearings, which were quite extensive, found specifically that, at the time it deposited the air-dried sludge on the lots, plaintiff intended to use the air-dried sludge as a basic ingredient for the manufac-

237

ture of fertilizer, and that the action taken by plaintiff furthering its fertilizer operation, after the issuance of the temporary injunction and following the recommendation of the Master in Chancery, was indicative of such continued intention to use the air-dried sludge for a fertilizer manufacturing purpose. While the issue was not free from doubt, the evidence was conflicting and this Court, under established appellate procedures, is not justified in substituting its judgment for that of the Master in Chancery and the trial court on such issues. Similarly, we would not be justified in characterizing the testimony of the witness McCormick as completely valueless, since this also would principally be a matter of judgment for the Master, and on the basis of the record as filed in this Court, this Court could not say, as the Sanitary District requests, that the Master should have disregarded the testimony in its entirety.

 Some evidence in the record showed that the fertilizer project of H.K.H. was under study some time before the sludge deposit operations were commenced. Following the issuance of the temporary injunction, the Chancellor required a progress report on the fertilizer venture. There was evidence in the record that the fertilizer possibility was first discussed in the early summer of 1963 and the first samples of sludge were taken prior to August 19, 1963, and an analysis was made of such sludge. We had discussed this aspect of the case in some detail in the previous opinion (H.K.H. Development Corp. v. Metropolitan Sanitary Dist. of Greater Chicago, 47 Ill App2d 46, 52, 196 NE2d 494). The sludge depositing operations were begun again after the issuance of the temporary injunction by the trial court on October 1, 1963. We cannot, on the basis of the record before us, find that the decree of the trial court based on the Master's report was contrary to the manifest weight of

the evidence on the issue relating to the deposit of sludge on the McQueen lots.

 The appellant contends in this cause that in computing the duration of the lease term granted in the McQueen lease by the Board of Trustees and the February 23, 1961, amendment, the total time of the extended term plus the option period (that is February 23, 1961, to October 31, 2059—98 years, 8 months, 5 days) must be added to the portion of the lease which had already expired, that is, 10 years, 3 months, 23 days, at the time of such amendment. This is the only basis upon which the District claims that the lease is actually for 109 years and not within the limited period of 99 years. This particular issue raising the question of the claimed invalidity of the McQueen lease amendment while not asserted as a basis for termination of the lease, was raised by the District after its presumed cancellation of the lease in pleadings in this cause. The order of the Board of Trustees on May 9, 1963, which attempted to cancel the McQueen lease was adopted without specific reasons asserted for such cancellation and no notice was given to the plaintiff of any default in the lease as required by the terms of the lease. The McQueen lease term at the time of the extension and amendment was subject to the terms of the statutory provision (1959 Ill Rev Stats, c 42, § 327). There is no question as to the power of the Sanitary District at such time, in the event such lease was terminated, to again lease the premises for a period not to exceed 99 years. Under the terms of the lease amendment of February 23, 1961, the expiration date of the basic lease was changed from November 1, 1970, to October 31, 2010, and the lessee was given an option to renew for an additional 49 years. The effect of the transaction was that the McQueen lease was modified, H.K.H. became the promisee, and there was a new

239

undertaking. The Master might have concluded that the conduct of the parties indicated that a novation was intended (Printing Mach. Maintenance, Inc. v. Carton Products Co., 15 Ill App2d 543, 554-557, 147 NE2d 443). The lessor would certainly have had the right to release a lessee from a previously executed lease and to modify the lease with the new lessee or grant a new lease for the same property. Approval of the amendment and the assignment was contemporaneous. The assignment purported to terminate the obligations of the original lessee. The trial judge had approved the finding of the Master that at the time the McQueen lease was amended extending the term and granting the lessee an option for an additional period of time, the Sanitary District did not thereby convey an interest in property beyond 99 years from the effective date of such amendments, and was, therefore, not in violation of the statute referred to. We find no basis in the evidence for concluding that such determination is unsound. We note the fact that the procedure referred to was approved as to form and legality by the attorneys for the District. All parties assumed that the extended term plus the option did not exceed the statutory period. Under such circumstances, we observe that the Master concluded that the modification was made by the parties hereto so as to convey the maximum leasehold estate which was authorized by law at such time. Even if the attempt to grant a greater estate than was authorized by the act under such circumstances was improper, the lease would still be effective for the 99-year limitation period and the court would be justified in reforming the lease to make it consistent with the intention of the parties; that is, to recast such lease as an entirely new lease so that it comes within the 99 year limitation (Smyth v. Kaspar American State Bank, 6 Ill App2d 64, 78, 127 NE2d 149; Culbertson v. City of Fulton, 127 Ill 30, 38, 18 NE 781; Mahon v. State Farm Mut.

Automobile Ins. Co., 36 Ill App2d 368, 377, 184 NE2d 718).

It is a further contention of the Sanitary District that the lease was never executed and that there was no consideration for it. It is noted that on or before February 23, 1961, the McQueen Company requested that the lease be modified specifically to grant the extension of time and also to grant the further option for 49 years and likewise requested a modification in the use provisions to include the storage of dry and liquid materials as hereinbefore noted. The Board of Trustees by order dated February 23, 1961, ordered that the lease be modified and amended as requested by the McQueen Company. The Board also specifically authorized the Chairman of the Committee on Finance and the Clerk of the Sanitary District to execute the consent to the assignment agreement on behalf of the Sanitary District. The orders and ordinances of the Board of Trustees are by statute received in evidence without further proof (1961 Ill Rev Stats, c 42, § 325). On the basis of the record before us, the approval by the Sanitary District of the amendment and the assignment was presumptively shown by the orders. In the record before us, the assignment of the lease bears the signatures not only of the assignor and assignee but of the Sanitary District as well. The assignment incorporates the amendment by reference (Johnston v. Messinger, 226 Ill App 397). Any requirements of the Statute of Frauds were satisfied as a result of the execution which incorporated the lease modifications (Western Metals Co. v. Hartman Ingot Metal Co., 303 Ill 479, 135 NE 744). As to the issue of consideration, the agreement by the lessee H.K.H. to be bound for an additional forty years was adequate consideration for the modification of the use clause referred to.

The contention that the approval of the chief engineer was required for the deposit of any material on

241

the land was previously considered in H.K.H. Development Corp. v. Metropolitan Sanitary Dist. of Greater Chicago, 47 Ill App2d 46, 53, 196 NE2d 494, where we said:

> "The District calls attention to a provision in the lease which requires the approval of the District's chief engineer as to whether materials deposited on the premises were 'suitable for fill,' and points out that plaintiff did not obtain and does not allege having obtained such approval. The District, however, overlooks the uncontradicted allegation in the supplemental complaint that the material was being placed on the land for manufacturing purposes, and not for fill."

It is apparent that the approval of the engineer as to material suitable for fill would have no application, if the material is not to be used as a fill but is to be used in a manufacturing process. On the basis of the record before us, we cannot say that the Master in Chancery and the trial court made a finding contrary to the manifest weight of the evidence that such material was not to be used as fill. The approval of the chief engineer, therefore, was not required in view of the record and finding that the material was not deposited as a fill.

We now turn to a consideration of the H.K.H. lease. There was evidence to support the plaintiff's contention that the H.K.H. lease was approved by the Board of Trustees; that it was properly executed and printed in the official minutes of the Board. In the Board order which purported to cancel the H.K.H. lease, the Board recited the alleged failure to obtain the consent of the State for the leasing of Lot 133 as a basis for its action. After the case was pending before the Master, and after a certain amount of testimony had been heard, the Sanitary District with leave of court filed an amended and supplemental answer which set forth the additional grounds for cancellation to the effect that the

242

lease was never approved by the Board of Trustees, and also that H.K.H. had granted an illegal sublease. There was evidence in the record that the officers of H.K.H. had conferred with a representative of the District in late 1960 or 1961 as to the availability of the property which subsequently became the demised premises under the H.K.H. lease. On August 3, 1961, the Board of Trustees of the District passed an order approving the leasing of the premises to H.K.H. The order recited the legal description of the property, the term of the lease plus option, the amount of rent to be paid therefor and the manner of computing future rents and the uses permitted under the lease. In the printed minutes of the Board of August 3, 1961, there appeared the following recital: "Form of said lease will be printed in a future issue." During August of 1961 the President of H.K.H. received from the representative of the District a document consisting of Thermofax copies of a proposed lease along with certain other attachments. The document was forwarded to an attorney for opinion and suggestion. Thereafter, conferences were held in the Sanitary District offices concerning certain changes, and in a letter to the District dated December 18, 1961, H.K.H. summarized the changes sought by it. Thereafter, a conference was held in the District office to resolve the matter which was attended by Sanitary District attorneys and representatives. Certain changes suggested by H.K.H. were accepted and others were rejected. The H.K.H. lease thereafter was executed on behalf of the District by the Chairman of the Committee on Finance of the Board of Trustees and was approved by the departmental engineer and chief engineer, real estate manager and the attorney and senior assistant attorney, as well as the general superintendent. It was printed in the minutes of the meeting of the Board of Trustees of May 3, 1962, as we have previously indicated with the legend: "Board order on said lease passed mtg. of

243

Aug. 3rd, 1961. See page 460 of proc." The minutes of the meeting of May 3, 1962, were approved "as printed on June 14, 1962." The circumstance that certain changes could have been made after August 3, 1961, would not, as contended by Sanitary District, operate to invalidate the lease. It is obvious that the parties intended, that, if the Board approved, a final draft of the lease would be worked out, the lease would be executed and the finished lease published in the minutes at a later date with the minutes to be approved as printed. When the final draft was executed it was printed in the minutes with reference to the prior Board order. This apparently was standard procedure established by the District. The statute which authorizes lease or conveyance of land by the Sanitary District (1961 Ill Rev Stats, c 42, § 323) did not specify with particularity the manner in which it is to be done. It is apparent from the record that the conclusion of the Master in Chancery and the trial court that the lease was executed and concluded in a fair and reasonable way, and that the circumstance that the completed document was spread of record in the minutes, the official journal of the Board, and approved as printed, was sufficient to make such lease valid and binding on the District.

 The record indicates that Lot 133 could not be leased without the written approval of the Director of the Department of Public Works and Buildings (1961 Ill Rev Stats, c 42, § 327). This consent in writing was in fact obtained and was requisite to a lease of a period in excess of five years. The contention is made that the consent is invalid because the lessee H.K.H. rather than the District requested the consent, and also because the consent was not obtained prior to the granting of the lease. We find nothing in the statute which requires the prior approval of the Director of the Department of Public Works and Buildings of the State of Illinois, and

244

the lease obviously would be subject and subordinate to the rights of the State and voidable at the instance of the Director until consented to. The consent, however, was obtained, and the time of its issuance under the record in this case, would not be a circumstance which would operate to invalidate such lease. We also find nothing in the record which justifies the conclusion that the consent of the Director of the Department of Public Works and Buildings must be requested by the Sanitary District. The fact that the consent was given is sufficient and effective for the purpose of complying with the statute. The record discloses that 12 leases and one sale of property by the District were subject to the same statutory restriction as was Lot 133, and that no consent prior or subsequent to such transactions was ever obtained in five of the leases and one sale. In the case of two of the leases, consent was obtained after the term was commenced. In one case, additionally, consent was given for a 50-year lease only although the lease also contained an option for an additional 49 years. As indicated in People v. Fidelity & Casualty Co., 153 Ill 25, 39, 38 NE 752, in construing a statute of the character which we have under consideration, the court will regard and adopt, in doubtful cases, construction acted upon by the Department of Public Works and Buildings of the State of Illinois and the District. The uniform interpretation of this statute by actions of both the Sanitary District and the Director of the Department of Public Works and Buildings should be followed (Barrett v. Reuter, 289 Ill App 221, 230, 7 NE2d 774).

 The record does not disclose a lease with Material Service Corporation of any kind or any consideration received by H.K.H. from Material Service Corporation as a result of Material Service Corporation's activity in storing and unloading sand or materials upon a portion of the premises. A representative of H.K.H. testified, that, because of the questioned status of H.K.H.

245

following the notice of termination of the lease, it did not feel that it could either grant permission or deny permission, and that under the circumstances if Material Service Corporation got permission from the Sanitary District, H.K.H. could see no reason why it could object to the Sanitary District granting such permission. There was no evidence that Material Service Corporation obtained permission from the Sanitary District and if it had such permission it would have been a use acquiesced in by the District. If it had no such permission, the use thereof was not authorized either by H.K.H. or the Sanitary District and certainly such unauthorized use would not be a basis for a termination of the lease of H.K.H.

■■ In Article 6.01 of the H.K.H. lease, lessee was required to construct an improvement on the demised premises within five years of the commencement of the term. The lease was dated August 3, 1961, but was actually signed on December 29, 1961. It was printed in the minutes May 3, 1962, and the minutes were approved June 14, 1962. Only 11 months later on May 9, 1963, the District purported to cancel the lease. Continuously since that time the validity of the lease had been in litigation and its validity was vigorously contested by the Sanitary District. When the final decree in this cause was signed in the court below on January 24, 1967, the five years within which the improvements were to be constructed had elapsed. Since the activities of the Sanitary District in seeking to enforce cancellation caused or contributed to the delay, a time provision or limitation should not be enforced when it is unconscionable to do so (Witherstine v. Snyder, 225 Ill App 189, 194; Pfaff v. Petrie, 396 Ill 44, 56, 71 NE2d 345; City of Chicago v. Chicago & W. I. R. Co., 105 Ill 73). In view of the fact that the complaint prayed for equitable relief, and since H.K.H. because of the litigation resulting from Sanitary District action had not completed the improvements required under Article 6.01 of the lease, it was a

proper exercise of equitable powers for the trial court to postpone the performance of that condition of the contract for a further period of five years. Even if no such extension of time was granted at the time of the entry of this decree, an extension of such character would have been granted upon application of plaintiff in a supplementary proceeding addressed to the equitable powers of the court. It, therefore, appears to us that it is in the best interest of the parties hereto that such determination be made in conjunction with the disposition of other related issues.

The Sanitary District sought forfeiture of both of the leases of H.K.H., including the McQueen lease. There was evidence that there had been substantial expenditures of time and money on the part of H.K.H. in developing the site. When the McQueen lease was first obtained, a portion of it was low and marshy and contained a lake. It was also overflowed by the Des Plaines River. H.K.H. evicted squatters on the premises, removed old trees and junk, graded and filled the terrain, and filled in a lake. Payment of rents and taxes in excess of $65,000 were paid, and some efforts, so far as the record discloses, were made to develop a fertilizer usage. Under all such circumstances, we cannot conclude that the finding of the Master that the balance of equities favored H.K.H. was contrary to the manifest weight of the evidence.

 ██ Defendant asserts that even if the decree was justified, it goes too far in its permanent injunction since the parties will have a future continuing relationship and since plaintiff might be guilty in the future of a lease violation. These observations have a sound basis, but do not require a modification of the decree at this time. The court retains the power to modify the injunction when future acts or conditions require such modification or determination (Material Service Corp. v. Hollingsworth, 415 Ill 284, 287–288, 112 NE2d 703). There is a broad inherent power to modify injunctions in light

247

of changing conditions. This power to modify is basic and essential so that injunctions would not themselves become instruments of inequity. Defendant may always apply to the court for relief if a future violation or condition justifies such relief.

In the state of the record before us, acting within the scope of the powers granted to a court of review in an action of the nature before us, we would not be justified in reversing this cause. The judgment of the Circuit Court of Cook County will, therefore, be affirmed.

Affirmed.

STOUDER and CULBERTSON, JJ., concur.