604

ALBERT L. NEMIROW, d/b/a A-N PARTS & SERVICE COMPANY, Plaintiff-Appellee, v. JOHN KUHN et al., Defendants-Appellants.

(No. 55592;

First District—July 19, 1971.

Sherman, Schachtman & Stein, of Chicago, (Samuel Schachtman and Ronald Butler, of counsel,) for appellants.

Barclay, Damisch & Sinson, of Chicago, (John W. Damisch, Edward A. Berman, and Loretta C. Didzerekis, of counsel,) for appellee.

Much & Shelist, of Chicago, (Morrie Much, of counsel,) amicus curiae.

Mr. JUSTICE LYONS delivered the opinion of the court:

This is an appeal by defendant Crown Coin Meter Company (hereafter Crown) for a temporary injunction entered in favor of plaintiff and against defendants Kuhn and Crown.

The plaintiff, Albert Nemirow, owns and operates a business engaged

in the installation and service of coin-operated laundry machines in apartment buildings throughout the metropolitan Chicago area. Defendant Crown is a competitor of the plaintiff and defendant Kuhn is the owner of an apartment building wherein both Nemirow and Crown have installed their machines.

The following facts are necessary to an understanding of the case. On December 31, 1958, one Seymour Paul entered into an agreement with the owner of an apartment building at 7746-56 Haskins Street, Chicago, whereby Paul was given the "exclusive right to place in the basement of the premises a sufficient number of washing machines and dryers so that the tenants in the building will have said machines available as and for laundering facilities for the use of the tenants therein * * *." The agreement also provided that the owner would provide the necessary space for the installation and would not install or permit the installation or use of similar equipment during the pendency of the agreement. The agreement, which required that the owner be paid twenty per cent of the gross receipts of the operation on a semi-annual basis, was set for expiration on December 31, 1970, but included an option for a five year renewal by the laundry operator. On January 2, 1965, Seymour Paul assigned his interest in the agreement to Albert Nemirow, the plaintiff in the instant case, and, at the same time, sold Nemirow the washing machines and dryers which had been installed at 7746-56 Haskins Street, Chicago. Nemirow continued to operate the laundry facility as Paul had in the past.

On or about July 1, 1966, the apartment building in which Nemirow was operating his laundry concession was sold to defendant John Kuhn. Nemirow learned of the sale in early July, 1966, and wrote to Kuhn and advised him of the existing agreement. A short time later, Nemirow met with Kuhn and discussed the terms of the agreement. Kuhn expressed his complete satisfaction with the agreement and accepted a semi-annual payment of the owner's share of gross receipts from Nemirow.

In October of 1969 Kuhn contacted Nemirow and advised him that Crown was interested in installing its laundry equipment on the premises at 7746-56 Haskins Street. Kuhn indicated that Crown had offered various inducements to him and inquired whether Nemirow would meet or better Crown's offer. Nemirow stated that he would stand on the existing agreement and declined to modify its terms. In November of 1969 Nemirow received a service call that his machines were out of order. He dispatched a serviceman to the premises and was informed that the machines had been disconnected and that several of Crown's machines had been connected in their place. Nemirow ordered the reconnection of his machines

and the disconnection of Crown's. Sometime in January of 1970, Crown learned that its machines had been disconnected and that Nemirow's had been reconnected. Crown reconnected its machines and disconnected Nemirow's. The reconnection-disconnection procedure occurred at least one more time (and possibly six times in all) until mid-February 1970 at which time Nemirow filed his lawsuit. At the time Nemirow filed the suit, his machines were connected and Crown's were not.

In his complaint, Nemirow prayed for a temporary injunction against Kuhn and Crown to prevent them from interfering with his exclusive right to maintain and service laundry equipment in the laundry room of the apartment building at 7746-56 Haskins Street. He also prayed for a permanent injunction and for a determination of damages.

During the course of the proceedings which ensued, it was established that Crown had executed a lease agreement with Kuhn in May of 1969 for the Laundry room of another building which Kuhn owned. Crown learned, however, that Kuhn had previously entered into an agreement with the Alco Automatic Laundry Company for laundry services at this other building. Crown confronted Kuhn with a copy of the Alco agreement whereupon Kuhn asked Crown to relinquish its rights in this other building and, instead, offered Crown the premises at 7746-56 Haskins Street. Crown asked Kuhn if there was a prior written agreement for the Haskins Street premises and was apparently informed that no such agreements were in effect. On September 16, 1969, Kuhn executed an agreement with Crown for the Haskins Street premises and Crown installed its equipment a short time later. The troublesome series of connections, disconnections and reconnections commenced about the same time.

After considering these facts, the trial judge entered an order which provided in part:

> "That defendants Crown Coin Meter Company and John Kuhn are hereby temporarily enjoined from in any way interfering with plaintiff's use of the laundry area in the building [at] 7746-56 Haskins, Chicago, including ingress or egress to said laundry equipment or in any way disconnecting plaintiff's laundry equipment on said premises until further order of this court."

Only defendant Crown has appealed from this order.

On appeal, Crown contends that the granting of injunctive relief in this case constituted an indiscriminate and arbitrary use of equitable power by the trial judge because: 1) the purported agreement relied upon by plaintiff regarding the laundry room at the Haskins Street premises was a mere license, terminable at will by the owner, and not a lease; 2) plaintiff failed to demonstrate by his pleadings and proof the prerequisites to

equitable jurisdiction; and 3) the doctrine of *laches* barred plaintiff from securing equitable relief.

■■ The very tenor of Crown's argument, however, indicates that it has misapprehended the purpose of a temporary injunction. The primary purpose of a temporary injunction is merely to preserve the last actual peaceable uncontested status which preceded the pending suit. (*Consumers Digest, Inc. v. Consumer Magazine, Inc.* (1968), 92 Ill.App.2d 54, 235 N.E.2d 421.) It is not the purpose of a temporary injunction to determine controverted rights or to decide the merits of the case. (*Seay & Thomas, Inc. v. Kerr's, Inc.* (1965), 58 Ill.App.2d 391, 208 N.E.2d 22.) Whether a temporary injunction should issue is a matter which rests largely in the discretion of the trial court (*Roth v. Daley* (1970), 119 Ill. App.2d 462, 256 N.E.2d 166), and on appellate review the sole inquiry is whether the trial judge abused his discretion by determining that an interlocutory order probably was necessary to maintain the status quo and preserve the equitable rights of the parties. *Seay & Thomas, Inc. v. Kerr's, Inc.* (1965), 58 Ill.App.2d 391, 208 N.E.2d 22.

The facts of this case reveal that the plaintiff has been operating his laundry business at 7746-56 Haskins Street for several years pursuant to an agreement with the owner. Whether that agreement constitutes a license rather than a lease is of no significance insofar as this appeal by Crown is concerned. Crown is not a party to the agreement, has no rights under the agreement and may not argue with any validity that its interference with plaintiff's business is justified if the agreement is construed to be a license rather than a lease. However the agreement might be construed, the fact remains that the plaintiff does have rights under the agreement while Crown has none, and the plaintiff's rights ought to be protected against interference by third parties who are without rights under the agreement.

It is true, of course, that Crown has rights under the lease granted by Kuhn on September 16, 1969. Whether these leasehold rights of Crown should enjoy any priority over plaintiff's rights is an issue which can be resolved only after careful consideration by the trial judge of all of the evidence to be adduced in the trial court. In any event, we believe that the trial judge's issuance of the temporary injunction was a proper exercise of his discretion considering the situation with which he was presented. The practical effect of the injunction was to halt the almost ridiculous series of disconnections and reconnections of laundry equipment and thus preserve the status quo until the respective rights of the various parties could be equitably determined and the case decided on its merits.

■■ Hence, we find no abuse of discretion by the trial court under the

particular facts of this case; nor do we find that the facts here lend merit to Crown's contentions concerning plaintiff's alleged failure to establish equitable jurisdiction or plaintiff's alleged *laches*.

Accordingly, for the reasons we have indicated, the order of the trial court is affirmed.

Order affirmed.

BURKE, P. J., and GOLDBERG, J., concur.