John Deere Company of Moline, a Corporation, Plaintiff-Appellee, v. Bert F. Hinrichs, et al. (Louis Surkin, Andrew Pettinger, B. F. Hinrichs Implement Company, Inc., a Corporation, and Bert F. Hinrichs Company, a Corporation), Defendants-Appellants.

Gen. No. 11,613.

Second District, First Division.

June 16, 1962.

John J. Dillon, Patrick A. Barton, Fleck & Pollack, of Chicago, and Gerald W. Fearer, of Oregon, for appellants.

Dixon, Devine, Ray & Morin, of Dixon, for appellee.

DOVE, P. J.

This is an interlocutory appeal by Louis Surkin, Andrew Pettinger, B. F. Hinrichs Implement Company, a corporation, and Bert F. Hinrichs Company, a corporation, from an order of the Circuit Court of Lee County, entered on January 19, 1962, denying their motion to dissolve a preliminary injunction issued by the Court on December 15, 1961.

The record discloses that on December 7, 1960 the Deere Company, by its Division Sales Manager at the company's office in Moline, Illinois accepted a contract dated November 10, 1960, signed by B. F. Hinrichs Implement Company, a corporation. This contract is designated as a "General Agricultural Dealer's Contract," and covers 37 printed pages of the abstract.

On December 5, 1961 the instant complaint was filed which alleged that the Deere Company and the B. F. Hinrichs Implement Company, hereinafter referred to as the Implement Company, had for several years executed a general agricultural dealers contract under the provisions of which the Implement Company became an agricultural dealer for Deere Company; that the last contract executed by Deere Company was on November 10, 1960; that as an inducement to Deere Company to enter into these contracts, Bert F. Hinrichs executed and delivered to the Deere Company his written unconditional guarantee of payment of any sums the Implement Company might be owing the Deere Company; that in the year 1960–1961 Bert F. Hinrichs organized under the laws of the State of Delaware, a corporation known as the Bert F. Hinrichs Company and hereinafter referred to as the Hinrichs Company; that Bert F. Hinrichs was the principal stockholder of this company and all the assets of the Implement Company were transferred to the Hinrichs Company which assumed all the liabilities of the Implement Company,

including its rights and obligations under the B. F. Hinrichs Implement Company contract with the Deere Company and thereafter the Hinrichs Company took over the operation of this contract.

The complaint then alleges, on information and belief, that Hinrichs, Surkin and Pettinger are officers and directors of the Hinrichs Company; that on August 8, 1961 Bert F. Hinrichs and Louis Surkin entered into an agreement whereby Hinrichs transferred to Surkin, 1850 shares of the capital stock of the Hinrichs Company, being a majority of the stock of that company, and Surkin conveyed to Bert F. Hinrichs certain parcels of real estate located in Illinois and in other States.

It is then alleged that in the latter part of October, 1961 the Deere Company learned for the first time, that Bert F. Hinrichs had transferred control of his corporate stock to Louis Surkin and Andrew Pettinger; that upon learning of this, the Deere Company required, as a condition to the continuance of operations under its contract that Bert F. Hinrichs, Louis Surkin and Andrew Pettinger execute and deliver to the Deere Company their respective individual guarantees of the payment of whatever sums the Implement Company might, at any time be indebted to the Deere Company; that such guarantees were thereafter executed and delivered to the Deere Company and copies thereof were attached, as exhibits, to the complaint.

The complaint then alleges that in November, 1961 at a regular monthly review of the status of the account under the contract between the Deere Company and the Implement Company, it was ascertained that a sum in excess of $72,000 was owing and immediately due the Deere Company; that the Implement Company had no funds and Messrs. Surkin, Hinrichs and Pettinger and the Hinrichs Company all refused and failed to pay the Deere Company any part of said sum admittedly due

the Deere Company. It was alleged that Louis Surkin had instituted a pending action against Bert F. Hinrichs in which action Surkin charged that he, Hinrichs, had diverted corporate funds of the Implement Company and the Hinrichs Company.

The complaint then alleged, upon information and belief, that the several individual defendants, Surkin, Pettinger and Hinrichs, have all diverted corporate funds to their individual purposes and in so doing acted with a fraudulent intent designed to deprive the Deere Company of money and property to which it is entitled under its contract.

It is then alleged that the plaintiff had filed an action in replevin in the Circuit Court of Lee County against the Implement Company, the Hinrichs Company, Bert F. Hinrichs, Louis Surkin and Andrew Pettinger; that in the execution of said writ of replevin, the sheriff has been unable to locate many of the chattels sought to be replevined; that plaintiff has requested the corporate defendants and Messrs. Hinrichs, Surkin and Pettinger to deliver to it all notes and accounts representing proceeds of sales made under the dealers contract; that these parties have failed and refused to do so and plaintiff fears that such notes and accounts may have been disposed of by defendants in furtherance of the purpose of defendants to defraud plaintiff.

The complaint then alleges that the descriptions and locations of assets owned by Messrs. Hinrichs, Surkin and Pettinger, are not known to plaintiff; that discovery of such information will consume considerable time and that plaintiff's rights against the individual defendants upon their several written guarantees cannot be accomplished until the amount due plaintiff under its dealers contract has been finally determined; that Bert F. Hinrichs has executed two warranty deeds,

259

two trust deeds and one chattel mortgage by the provisions of which, Bert F. Hinrichs has conveyed to Donald Faber, as trustee, and to R. W. Hensel as trustee, to the Ashton Bank, to Ernest Claus and to Robert H. Reck, certain described real and personal property; that said instruments were executed without adequate consideration and were delivered for the purpose of hindering and delaying the plaintiff in the enforcement of its contract and that such instruments should be declared null and void.

It is further alleged that the corporate defendants and Messrs. Hinrichs, Surkin and Pettinger are the owners of growing crops, livestock, poultry and other farm products and equipment and also the owners of various described tracts of real estate and plaintiff charges that these properties or interests therein were acquired by defendants, with funds to which plaintiff was and is entitled and in many instances the ownerships of such properties were the basis of financial statements delivered to the plaintiff, by said several defendants, which induced plaintiff to extend the credits which remain unpaid to the plaintiff.

The prayer of the complaint was:

(a) That the court determine the amount due and owing plaintiff under the dealer contract from the Hinrichs Company and the Implement Company and render a judgment or decree for said sum so found due in favor of the plaintiff.

(b) That the court render a judgment, order or decree against Hinrichs, Surkin and Pettinger upon their several written guarantees, for the sum so found due plaintiff under the provisions of said contract.

(c) That the court require defendants to deliver to plaintiff possession of, and assign to plaintiff all of their right, title and interest in and to, all notes and evidences of indebtedness and accounts receivable

which represent the proceeds of sales made under and pursuant to the dealers contract.

(d) That the court issue a preliminary injunction restraining the corporate defendants and Messrs. Hinrichs, Surkin and Pettinger from mortgaging, selling or disposing of any of their interests in the real and personal property described in the complaint, and restrain the Ashton Bank, Ernest Claus, Robert H. Reck, R. W. Hensel and Donald Faber from conveying or mortgaging any interest which they may have acquired in the real and personal property described in the several conveyances referred to in the complaint pending the final determination of this cause.

The complaint is verified and attached thereto was a copy of the dealer's contract, and copies of the unconditional guarantees of B. F. Hinrichs, dated December 10, 1958 and of Bert F. Hinrichs, dated October 24, 1961 and of Andrew Pettinger and of Louis Surkin each dated October 24, 1961, also attached to the complaint was an exhibit setting forth the kind of conveyance, date of each instrument, the names of the grantors and grantees and a description of the property conveyed. These five instruments were executed by B. F. Hinrichs and are the conveyances referred to in the complaint. Three of these conveyances were executed on November 22, 1961 and two were executed on November 24, 1961. There is also attached to the complaint, Exhibit G, which contains a description of various parcels of real estate located in Illinois, in Lee and Ogle Counties and which the exhibit states belong, in whole or in part, to certain defendants.

The complaint was filed on December 5, 1961 and made B. F. Hinrichs Implement Company, a corporation, Bert F. Hinrichs Company, a Corporation, Bert F. Hinrichs, Louis Surkin, Andrew Pettinger, Ernest Claus, Robert H. Reck, R. W. Hensel, Donald Faber and

261

the Ashton Bank, a corporation, defendants. On December 13, 1961, separate answers were filed to the complaint by Bert F. Hinrichs, Ernest Claus, Robert H. Reck, R. W. Hensel, Donald Faber, Louis Surkin and Andrew Pettinger. On the same day a motion was filed by plaintiff for a preliminary injunction based on the verified complaint. Upon notice to all defendants, a hearing was had on December 13, 1961 at which time all defendants were represented by counsel except the Ashton Bank. The defendants, Hinrichs Implement Company, Bert F. Hinrichs Company, Louis Surkin and Andrew Pettinger were represented by their attorney, Edward M. Sullivan.

At the conclusion of the hearing a preliminary injunction was issued without bond which enjoined the Implement Company, the Hinrichs Company, both corporations, and also Messrs. Bert F. Hinrichs, Louis Surkin and Andrew Pettinger from mortgaging, selling or otherwise disposing of (a) any right title or interest in or to any property delivered by plaintiff in performance of its contract with the Implement Company and the Hinrichs Company; (b) any goods, chattels, notes, accounts receivable or other property of any nature, real, personal or mixed, tangible or intangible, including also any increase thereof or thereon, such as growing crops, or any interest in such property, which are the proceeds of sales of property of the plaintiff or of property owned solely or jointly or in common with any other person or persons.

The preliminary writ also directed the two corporations, B. F. Hinrichs Implement Company and Bert F. Hinrichs Company to deliver to Plaintiff on or before December 31, 1961 a full and complete accounting of all their receipts and disbursements commencing with November 14, 1961. The order directed these corporations to open a trust account in the Dixon National Bank, appointed this bank agent for said corporations

262

and required the corporations to deposit in said account all sums now outstanding in other bank accounts of said defendants, all moneys presently on hand and all moneys received thereafter by either corporation. The order further directed these corporate defendants, to cause the Dixon National Bank to make disbursements from said trust account only in accordance with the orders of the court. The order required these corporations to direct the mail ordinarily received by these defendants at Amboy, to be delivered to Edward M. Sullivan, who is the attorney of record for these defendants and who represented them upon this hearing. The order also directed Mr. Sullivan to receive the mail, open it in the presence of an agent of the corporations and for Sullivan to deposit in said trust account, all moneys, checks and other receipts found in said mail.

On January 15, 1962 the corporate defendants, B. F. Hinrichs Implement Company and Bert F. Hinrichs Company and Messrs. Surkin and Pettinger filed their motion to dissolve the preliminary injunction. A hearing was had and this motion was denied on January 19, 1962. Thereafter on February 7, 1962 a cost bond in the sum of $250 was approved by the chancellor and filed and on February 9, 1962, a praecipe for a record was filed by the corporate defendants and Messrs. Surkin and Pettinger and notice thereof served on opposing counsel.

To reverse the order of January 19, 1962 which denied the motion to dissolve the preliminary injunction which was entered on December 15, 1961, B. F. Hinrichs Implement Company and Bert F. Hinrichs Company and Louis Surkin and Andrew Pettinger appeal.

Counsel for appellants insist that the record discloses that the relationship of the parties to this appeal is that of debtor and creditor; that plaintiff's action is a simple claim for the recovery of money and that

plaintiff has an adequate remedy at law. Counsel state that the primary purpose of a temporary injunction is to preserve matters in status quo until the court has had an opportunity to consider the cause upon its merits and to prevent such acts, during the pendency of the action, as would preclude the court from giving the plaintiff the relief he is entitled to at the conclusion of the litigation. Counsel argue that the effect of the injunction issued in the instant case was to put appellants out of business; that it was not to preserve the status quo but to attach appellants property and subject it to the satisfaction of any judgment plaintiff may thereafter obtain against defendants.

This litigation is based upon the dealers contract executed by plaintiff and the Implement Company. After its execution, the assets of the Implement Company, including this contract, were transferred to the Hinrichs Company. Appellants, Surkin and Pettinger, became the principal owners of the stock in the Hinrichs Company and when plaintiff learned of that fact it required, and Messrs. Surkin and Pettinger executed, instruments by the provisions of which, each unconditionally guaranteed the payment of whatever sum the Hinrichs Company might owe the plaintiff. In November 1961, a sum in excess of $72,000 was due the plaintiff under this dealer contract which had been assumed by the Hinrichs Company. The verified complaint alleged that the Hinrichs Company had nothing with which to pay this indebtedness and that the Implement Company, Bert F. Hinrichs, Louis Surkin and Andrew Pettinger refused to pay. The verified complaint averred that these individual appellants had diverted the funds of the corporation to their individual purposes with the fraudulent intent to deprive plaintiff of money and property to which it was entitled under the contract.

264

On the day of the hearing of plaintiff's motion for a preliminary injunction, December 13, 1961, the supporting affidavit of Eugene Lamb was filed. In this affidavit Mr. Lamb states that he was acquainted with the transactions between plaintiff and the defendants as alleged in the complaint; that he was personally involved in the settlement of accounts between the plaintiff and the defendant corporations and in the inventorying, identifying and location of assets of the plaintiff which have been in the possession of the defendants or some of them under the dealers contract; that many of the assets of the plaintiff are missing or not in the locations where defendants have represented them to be, or in the possession of persons, as represented by defendants, and that defendants have failed and refused to deliver to plaintiff the notes and accounts, which under said contract, are owned by the plaintiff, or to disclose the whereabouts thereof to plaintiff.

Affiant further stated, upon information and belief, that some of the assets, which defendants have represented to be in their possession and which belong to the plaintiff under the contract, have been disposed of and the proceeds thereof not accounted for; that some of the proceeds of said sales of plaintiff's property, have been used by the individual defendants to purchase properties, real and personal, the exact nature and location of which are unknown to affiant but that some of the properties are those described in the exhibits attached to the complaint and that some of these properties were the basis for financial statements delivered to plaintiff by defendants, which induced plaintiff to extend credit to the defendant corporations. Affiant then concluded that from his investigation of the accounts and records of the transactions under the dealers contract, the determination

of the location and title to the properties so involved and the amount due plaintiff from defendants, will require an extended period of investigation.

The order which the court entered on December 13, 1961, and which was filed and approved on December 15, 1961, directed a preliminary writ of injunction to issue restraining appellants, and also Bert F. Hinrichs, from disposing of any property delivered to them by plaintiff under the dealers contract or from disposing of any property acquired with the proceeds of sales of such property, whether owned solely or jointly or in common with any other person or persons. The dealers contract, upon which this litigation is based provided that title to and ownership of all goods delivered by the company to the dealer shall remain vested in the company until full payment of all indebtedness arising under the contract shall have been made to the company. The contract also provided that pending settlement with the company title to all proceeds of sale, regardless of the form of such proceeds, shall be in the company and such proceeds shall be received and held by the dealer as the company's property in lieu of the goods so sold. In view of these and other provisions of the contract and the allegations of the verified complaint and the supporting affidavit the issuance of the restraining order, as indicated in this paragraph was clearly warranted and the chancellor did not abuse his discretion in so doing.

Altho there was no prayer for a mandatory injunction or for the relief which follows, the chancellor at the conclusion of the hearing, on December 13, 1961, entered an order directing the corporation to do seven things, viz: (1) Deliver to the plaintiff on or before December 31, 1961, a full and complete accounting of their receipts and disbursements commencing with November 14, 1961. (2) Open a trust account in the Dixon National Bank. (3) Deposit in this account all

266

sums outstanding in other banks to the credit of these corporations. (4) Deposit in this account all moneys on hand. (5) Deposit in this account all moneys thereafter receivable by said corporations. (6) Make disbursements from this trust account only in accordance with orders of the court and (7) to direct that the mail addressed to the corporations, be delivered to Edward M. Sullivan.

In addition to ordering the corporations to do these several affirmative acts, the order appointed the Dixon National Bank, agent for the corporations, and directed Edward M. Sullivan, counsel who then represented appellants, to receive the mail of the corporations, open it, and deposit all moneys and checks received by mail in the trust account in the Dixon National Bank.

The record discloses that separate, verified answers to the complaint were filed by Louis Surkin, Andrew Pettinger, Bert F. Hinrichs, Ernest Claus, Robert H. Reck, R. W. Hensel and Donald Faber on December 13, 1961 and the additional abstract filed by appellee discloses that on December 29, 1961, Bert F. Hinrichs filed his verified petition alleging that the corporate defendants had violated the provisions of the temporary injunction by selling tangible personal property; that many of said sales were made at less than dealer's costs and that Messrs. Surkin and Pettinger have been managing the business affairs of the corporations and have failed to open a trust account as provided and directed in the temporary order. The petition prayed for an order requiring defendants to show cause why they should not be adjudged in contempt of court.

The additional abstract also discloses that on January 4, 1962 plaintiff filed its petition alleging that the defendant corporations have failed to do any of the actions directed in the mandatory portion of the order of December 13, 1961; that defendants Surkin and Pettinger, prior to the entry of that order, managed

267

the corporations and that Edward M. Sullivan, their attorney informed counsel for plaintiff that Messrs. Surkin and Pettinger have failed and refused to comply with said order of December 15, 1961. This petition likewise prayed for an order citing the corporations and Messrs. Surkin and Pettinger to show cause why they should not be adjudged in contempt. Separate answers to these petitions were filed by defendants and an instrument entitled, "Audit of Louis Surkin pertaining to defendant corporations filed January 16, 1962, with amendment," was filed in the cause on January 16, 1962. This instrument shows receipts of various amounts from various parties beginning November 14, 1961 and ending December 12, 1961. These receipts aggregate $9,560.45 and the disbursements to and including January 8, 1962, aggregate $9,349.56.

The record also discloses that on January 7, 1962, Edward M. Sullivan withdrew as counsel for the corporations and as attorney for Messrs. Surkin and Pettinger and that counsel, who now appear for appellants, were substituted. It also appears that on January 8, 1962 a hearing was had upon the petitions for a rule to show cause and the answers thereto, which resulted in an order directing that the place of business of the Implement Company and the Bert F. Hinrichs Company, in Amboy, Illinois, "be locked up and no business conducted until further order of the court."

This is an interlocutory appeal from the order denying the motion of appellants to dissolve the preliminary injunction which had been granted on December 13, 1961, the written order, however, was not filed and approved until December 15, 1961. The rights of the parties must be determined as of the time when the order was entered. We are not concerned therefore, at this time, upon this appeal, with what subsequently transpired. The issues made by the complaint and

answers, the issues made by the petitioners for a rule on the defendants to show cause why they should not be held in contempt and the answers to said petitions are not before us on this appeal. (Goldblatt Bros., Inc. v. Sixty-Third & Halsted Realty Co., 338 Ill App 543, 545, 548, 88 NE2d 100.)

▉▉▉ A preliminary, temporary or interlocutory injunction is granted before the hearing of a case on its merits for the purpose of preventing a threatened wrong or any further perpetration of injury, in order to preserve the subject or object of the controversy in its then existing condition, that is, in order to preserve the status quo with the least injury to all the parties concerned. It is not the purpose of such an injunction to determine any controverted rights or to decide the merits of a case. It is not the function of the writ to compel the defendant to undo what he has already done or to take property out of the possession of one party and put it into possession of another. (21 ILP Injunctions, Chap 1, sec 4.)

A mandatory injunction is an extraordinary remedial process which commands the performance of some positive act. It is a writ which is not regarded with judicial favor. It is not the purpose of a mandatory injunction to grant affirmative relief, to correct wrongs or injuries already perpetrated, or to restore parties to rights of which they have been deprived. (21 ILP Injunctions, Chap 1, sec 3.)

In the instant case the motion of plaintiff for a preliminary injunction sought only an order of the court restraining appellants and Bert F. Hinrichs "from mortgaging, selling or otherwise disposing of any of their interests in any of the properties, real or personal, tangible or intangible, in which they or any of them have an interest pending final determination of this cause." In support of this motion a copy of the verified complaint was thereto attached and made a part

thereof. The complaint did not ask for any mandatory preliminary injunction. There was no request that the court appoint the Dixon National Bank, agent for the corporations, or that the mail of these corporations be delivered to Mr. Sullivan or that he be ordered to receive the mail, open it, deposit all moneys received by him by mail in the Dixon National Bank or that the corporations should be ordered to do any of the affirmative acts this preliminary order directed them to do.

█ The principal relief sought by plaintiff in the instant complaint is an accounting with the corporate defendants and a money judgment for the amount found due. No authority has been cited which would authorize, upon the motion filed herein and the allegations of the complaint, the mandatory provisions of the order granted by the chancellor. As said in Deisenroth v. Dodge, 350 Ill App 20, 22 111 NE2d 575, the primary purpose for the issuance of a temporary mandatory injunction is to preserve the status quo until there can be a final hearing upon the merits and the status quo which will be so preserved by a preliminary injunction is "the last actual, peaceable, noncontested status", which preceded the pending controversy. The mandatory order in the instant case does not preserve the status which obtained at the time this complaint was filed on December 5, 1961. The effect of this order was to place all the assets of the corporate defendants in the control of the court. Without any motion or request for so doing the court actually placed these corporations in receivership.

█ █ There is no merit in appellants' contention that the chancellor erred in issuing the temporary injunction without bond. This order was issued after notice to the defendants and upon a full hearing. The purpose of requiring a bond of the plaintiff is to

protect the defendant in the event the preliminary injunction is later dissolved and damages are assessed against the plaintiff. (Atkinson Trust and Savings Bank v. DeRoo, 332 Ill App 251, 75 NE2d 46.)

The order appealed from is reversed in part and affirmed in part. The portion of the order directing the corporate defendants to do the affirmative acts herein referred is reversed. In all other respects the order is affirmed. The cause is remanded to the Circuit Court with directions to enter an order in consonance with this opinion.

Order affirmed in part and reversed in part and cause remanded with directions.

McNEAL and SMITH, JJ., concur.