FREDERICK CHUSID & COMPANY, Plaintiff-Appellee, *v.* COLLINS TUTTLE AND COMPANY, INC. *et al.*, Defendants-Appellants.

(No. 56430;

First District (3rd Division)—March 8, 1973.

Arthur W. Friedman and Donald K. Basta, both of Schwartz & Freeman, of Chicago, for appellee.

Robert P. Cole and Richard S. Kuhlman, both of Chicago, for appellants.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court:

This is an interlocutory appeal by the defendants, Collins Tuttle and Company, Kearney-National, Inc., and American National Bank & Trust Co., from an order granting a temporary injunction to the plaintiff, Frederick Chusid & Co. The injunction restrained the defendants from interfering with Chusid's possession of office space which it had leased from Kearney-National. The defendants were also restrained from interfering with a sublease between Chusid and Pullman Incorporated covering part of the premises.

The American National Bank is the trustee of an office building located at 200 South Michigan Avenue, Chicago. The entire 13th floor was leased to Kearney-National, Inc. In August 1963 Kearney sublet a portion of the floor to Frederick Chusid & Co. for a term of years ending in 1978. The Chusid sublease was amended from time to time to increase the size of the premises and the rent. Subsequently, Chusid sublet part of its space to Pullman Incorporated.

On June 15, 1971, Kearney entered into an agreement with Collins Tuttle and Company, the managing agent for the trustee, to terminate Kearney's lease as of July 1, 1971. The agreement purported to convey to the managing agent, "* * * all rights or privileges under any subleases * * * including the right to cancel any of such subleases." On July 12, 1971, Chusid was informed by Collins Tuttle that the Kearney lease had been terminated and was told that pursuant to the terms of its sublease with Kearney, its tenancy also was terminated. Chusid was requested to vacate the premises on or before August 31, 1971.

On July 21, 1971, Pullman notified Chusid that it had been informed

by Collins Tuttle of the cancellation of Chusid's lease and that it had been directed to pay no more rent under its sublease with Chusid. Thereafter, Pullman refused to make further rental payments to Chusid despite notice that Chusid considered its rights under the sublease with Pullman as remaining in force.

Chusid informed Collins Tuttle, Kearney and the trustee that it did not accept the termination of its sublease, and that it still considered its rights over the premises to be in full force and effect. Chusid received written invoices from Collins Tuttle for the August 1971 rent, which Chusid paid. However, the payment was returned marked "unacceptable."

Chusid then filed a complaint for a temporary injunction to restrain the defendants from interfering with its rights to the premises and from taking any action to recover possession of them. The complaint stated that Chusid's business was conducting consultations with respect to executive assessment, development and career advancement. It maintains 20 offices nationwide, with a regional office located on the premises sublet from Kearney-National. This sublease was a particularly valuable asset because, in order to maintain the continuity of its business and preserve its reputation for stability, dependability and reliability, it was essential to lease its office space for a long duration—15 years—in a well located, high prestige, downtown office building. Advertising commitments stating its current address as well as appointments with executives had to be made months in advance, and for it to be compelled suddenly to move its offices to another location would inflict irreparable harm upon it. Chusid claimed that the termination of its sublease through the mutual surrender of the base lease by the defendants was in derogation of its rights under its sublease and, therefore, its sublease remained in effect.

The defendants' answer cited paragraph 20 of the sublease which states, "* * * if Landlord's lease with its Lessor should be terminated in whole or in part for any reason whatsoever, this lease or the part of the premises affected by such termination shall automatically be terminated." The defendants contended in the trial court and argue in this court that the cancellation agreement between Kearney and Collins Tuttle effectively extinguished Chusid's rights in the premises; they emphasize that the sublease provided for this result in the event the base lease was terminated "for any reason whatsoever."

Chusid responds that paragraph 20 must not be considered in a vacuum, but must be construed in relation to the other provisions of the sublease as well as those of the base lease. Although specific provisions are set forth in both leases regarding the right to terminate, no mention is made of the possibility of entry into a cancellation agreement

by the principal lessor and lessee so as to deprive a sublessee, in full compliance with the terms of its lease, of its right to possession. To permit such a result, Chusid asserts, would make a sublessee merely a tenant at will, the length of the term being subject to the decision of the original lessor and lessee, who could cancel a sublease at any time merely by concluding a termination agreement with respect to the base lease; hence, the 15-year term specified in the sublease upon which it relied as essential to the needs of its business, would have little significance.

■■ In presenting these arguments the parties are placing before this court the main issue raised by their pleadings: whether the Chusid sublease continued in effect despite the cancellation of the base lease by Kearney and Collins Tuttle. This issue was not, with finality, decided by the trial court and we will not decide it here. The complaint and answer raised a debatable issue of law, and the trial court merely determined that the position of the parties should be held in status quo until the issue could be adjudicated. This is the purpose of a temporary injunction. It is not the purpose of a temporary injunction to determine controverted rights or to decide the merits of the case. *Schultz v. Agenlian* (1967), 90 Ill.App.2d 131, 234 N.E.2d 345.

■■ The only proper question before us is whether the court correctly exercised its discretion in granting the injunction. Unless it is determined that the court abused the broad discretionary power with which it is vested, its order will not be set aside. (*Roth v. Daley* (1970), 119 Ill.App.2d 462, 256 N.E.2d 166; *Seay & Thomas, Inc. v. Kerr's Inc.* (1965), 58 Ill.App.2d 391, 208 N.E.2d 22.) A temporary injunction is granted prior to a decision on the merits of a case to prevent a threatened wrong or the further perpetration of an injury. An applicant for an injunction need not make out a case which will entitle it at all events to the ultimate relief it seeks. It is sufficient if the applicant raises a fair question as to the existence of the right claimed, leads the court to believe that it will be entitled to the relief prayed for if its proof and the applicable law should sustain its allegations, and makes it appear advisable that the position of the parties should remain the same until the court has the opportunity to consider the case on its merits. (*H. K. H. Development Corp. v. Metropolitan Sanitary Dist.* (1964), 47 Ill.App.2d 46, 196 N.E.2d 494.) The pleadings in this case made out such a case.

■■ The trial court did not err in granting the temporary injunction. By its terms Chusid was guaranteed undisturbed possession of the premises but it was ordered to pay Collins Tuttle the rent due under its sublease with Kearney. Pullman was commanded to pay to Chusid the rent required under its sublease with Chusid. All rental payments were

to be made without prejudice to any party. The terms of the injunction were fair and it will remain in force.

■■ The same result would have been reached if we had faulted the defendants-appellants for not observing the rules of appellate procedure. When an appellant fails to file either an abstract of the record or excerpts from the record, the reviewing court may dismiss the appeal. *Davis v. Davis* (1970), 128 Ill.App.2d 427, 262 N.E.2d 788; *Denenberg v. Prudence Mutual Casualty Co.* (1970), 120 Ill.App.2d 68, 256 N.E.2d 71.

The order of the Circuit Court is affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.