Nick Grillo, d/b/a Nick's Dairy Service, *et al.*, Plaintiffs-Appellees, *v.* Sidney Wanzer & Sons, Inc., Defendant-Appellant.—(Board of Education of the City of Chicago *et al.*, Defendants-Appellees.)

(No. 60029;

First District (4th Division)—February 26, 1975.

1008

Donald E. Egan and Alan L. Unikel, both of Chicago (Rothschild, Barry & Myers, of counsel), for appellant.

Fred I. Shandling, of Chicago, for appellee Nick Grillo.

Kenneth E. Steffan, of Elgin, for appellee Ludwig Milk Company, Inc.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This is an appeal from an action brought by plaintiff, Nick Grillo, individually and d/b/a Nick's Dairy Service (Grillo), for injunctive relief against Sidney Wanzer & Sons, Inc. (Wanzer), the Board of Education of the City of Chicago (Board) and Joseph Bertrand as ex officio school treasurer of the Board of Education. Prior to a hearing on plaintiff's request for a preliminary injunction, Ludwig Milk Company (Ludwig) was granted leave to intervene as an additional party plaintiff. On January 14, 1974, the court entered a mandatory injunction against the Board prohibiting the payment to Wanzer of certain monies owed for milk received and directing that they be paid to Ludwig. Wanzer appeals.

Grillo is an independent milk distributor who purchases milk and milk products from dairies for resale to consumers. In November of 1970 Grillo became a Wanzer distributor. He continued to purchase his entire milk requirements from Wanzer through October 31, 1973, with the exception of one 3-month period wherein he purchased from Borden. Shortly after associating with Wanzer, Grillo obtained credit financing. In exchange therefor, Grillo executed a security agreement dated January 1, 1971, granting Wanzer a security interest in Grillo's "contract rights, accounts receivable, milk routes, as described in Schedule A attached hereto, and other collateral and in the proceeds and products thereof." Additionally, Grillo granted Wanzer a security interest in one of his trucks which was partially financed by Wanzer. On January 11, 1971, Wanzer filed a financing statement with the Secretary of State covering this collateral.

Milk contracts for a large number of schools are submitted by the Board to public bid. In accordance with this procedure, the Chicago Board of Education has contracted to purchase milk from Grillo for use in its school milk program for the past 4 to 5 years. The present action arose out of a bid submitted by Grillo in November of 1972 on a portion of the Board's milk requirements for 1973. Pursuant to his bid, Grillo was awarded a contract to deliver approximately 16,000 half-pints

daily to 18 schools. The deliveries were to commence on March 1, 1973. As of that date, Grillo was indebted to Wanzer in the amount of approximately $17,000.

At the hearing on plaintiffs' request for a temporary injunction, Wanzer alleged that Grillo executed an assignment to it of all rights under the contract. The assignment was to secure payment for milk delivered to Grillo. While Grillo alleged that the assignment was a forgery, his testimony was contradicted by one of his own witnesses who stated that he saw Grillo execute the document.

Pursuant to his contract with the Board, Grillo supplied milk to the schools which he purchased from Wanzer. In accordance with the terms of the assignment, the Board issued warrants directly to Wanzer in full payment of all monies due Grillo. Because of the Board's administrative procedure, the warrant for a given month's milk delivery was not issued until the following month. Thus, March milk was paid through the issuance of a warrant in April and so on thereafter.

Grillo remained a Wanzer distributor until October 31, 1973. At that point in time he owed Wanzer the sum of $78,792. Pursuant to the security agreement and the assignment, the Board issued a warrant to Wanzer in November of 1973 for the October milk delivery. The warrant was in the amount of $20,584.41, leaving a balance due Wanzer of $58,207.59.

On November 1, 1973, Grillo discontinued his association with Wanzer and began purchasing all milk requirements from Ludwig. On that day, Ludwig obtained an assignment from Grillo of all contract rights under the 1973 contract with the Board. The assignment was identical in form to that given Wanzer. It was immediately forwarded to the Board's purchasing department and subsequently was approved on November 15, 1973. Ludwig, however, did not obtain a security agreement, nor did he file the assignment or a financing statement with the Secretary of State. Furthermore, neither Grillo nor Ludwig obtained a release of the prior assignment to Wanzer. Pursuant to the prior assignment, the Board thereafter issued its December warrant to Wanzer for the November milk delivery, which milk was supplied by Ludwig to Grillo. Consequently, Grillo's debt to Wanzer was reduced to approximately $34,081.

The present law suit was filed on January 2, 1974, and at that point in time the Board had not yet issued its January warrant for milk delivered in December of 1973. Plaintiffs commenced this action seeking an injunction against the Board to stop payment of the December warrant, to issue a replacement warrant to Ludwig, and for other additional relief. Prior to an evidentiary hearing on plaintiffs' complaint for a preliminary injunction, Wanzer informed the court that the warrant for

November's milk had already been delivered to it, negotiated and paid by Bertrand. After a full hearing, the court accordingly dismissed Bertrand as a party defendant and denied plaintiffs' prayer for relief insofar as it requested a stop payment of that warrant. The court further enjoined the Board from issuing further warrants to Wanzer and ordered the Board to issue all subsequent warrants to Ludwig for milk supplied by Ludwig to Grillo and resold to the Board.

■■ We first must stress that the substantive issues of the instant case are not before us for resolution. They were not decided in the trial court, and we will not decide them now. The sole role of an appellate court in addressing the grant or refusal of an interlocutory decree is narrowly restricted to a determination of whether the judge correctly exercised his broad discretionary power. (*Toushin v. City of Chicago*, 23 Ill.App. 3d 797, 320 N.E.2d 202.) Therefore, each issue will be considered only so far as is necessary to determine whether the judge acted within the parameters of his authority.

Wanzer first contends that the trial court erred in granting the extraordinary remedy of a mandatory preliminary injunction since the decree had the effect of granting plaintiffs all relief they could possibly obtain at a full trial on the merits, and since the requisite showing of urgent need for such relief was not established. We agree.

■■ The purpose of an interlocutory, preliminary or temporary injunction is quite clear. Such a decree is granted before a trial on the merits of a case for the purpose of preventing a threatened wrong, or any further perpetration of injury, in order to preserve the status quo with the least injury to the parties concerned. (*John Deere Co. v. Hinrichs*, 36 Ill.App.2d 255, 183 N.E.2d 309.) It is not the purpose of such an injunction to determine any controverted rights nor to decide the merits of a case. *John Deere Co. v. Hinrichs*, 36 Ill.App.2d 255, 183 N.E.2d 309.

■■ While plaintiffs argue that the court's order of January 14, 1974, had the effect of maintaining the status quo, we fail to see how. The status quo has been defined as "the last, actual, peaceable, uncontested status which preceded the pending controversy." (*O'Brien v. Matual*, 14 Ill.App.2d 173, 187, 144 N.E.2d 446, 453.) By enjoining the Board from issuing warrants to Wanzer and directing that payment be made to Ludwig, the court in effect determined the ultimate issue in controversy by awarding plaintiffs all relief they could possibly obtain at a full trial on the merits. Prior to the institution of the instant cause, the singular uncontested status was that the Board owed payment for milk received. Clearly, the question of who was entitled to that payment was contested. Therefore, at most, plaintiffs were entitled to an order

enjoining the issuance of further warrants to Wanzer, for any additional relief would necessarily alter the status quo and would constitute an improper exercise of judicial discretion.

■■■ We note further that injunctions which are mandatory in character are not favored by the courts. (*John Deere Co. v. Hinrichs*, 36 Ill. App.2d 255, 183 N.E.2d 309.) A mandatory injunction is not granted as a matter of right, but rather only in rare cases of great necessity or extreme urgency when sound judicial discretion requires the court to act. (*National Bank v. River Forest State Bank*, 3 Ill.App.3d 209, 278 N.E. 2d 501.) For the court to find such extreme urgency or great necessity, the need for such relief must be clearly established and free from doubt. (*Moehling v. N. & J. Enterprises, Ltd.*, 15 Ill.App.3d 987, 305 N.E.2d 183.) Understandably, the requirements are even more stringent for the issuance of a mandatory preliminary injunction since the parties have not had the benefit of a full and final hearing. (*Moehling v. N. & J. Enterprises, Ltd.*, 15 Ill.App.3d 987, 305 N.E.2d 183.) Thus it has been held that where complete relief may be afforded after a final hearing on the merits, the case is not a proper one for a mandatory preliminary injunction. *National Bank v. River Forest State Bank,* 3 Ill.App.3d 209, 278 N.E.2d 501.

Plaintiffs argue that the case at bar is the extraordinary case which countenances the issuance of a mandatory preliminary injunction. In support they allege that if Ludwig were not compensated for milk it supplied, it would refuse further deliveries to Grillo. Consequently, Grillo would be forced to breach its contract with the Board, and in all probability would be foreclosed from any future contracts with the Board. Furthermore, no accounts receivable would be created, and Wanzer would have no claim to any monies from the Board. They also allege that the children of the Chicago schools would not receive their necessary milk supply. As a final argument, plaintiffs ask us to consider the respective injury to the parties and submit that the equities are clearly in favor of plaintiffs.

Suffice it to say, these allegations are not clearly and affirmatively supported by the record, nor are they sufficient to warrant mandatory injunctive relief at the preliminary stage of proceedings. This is particularly true since the parties could be afforded full relief at a full trial on the merits. Accordingly, we reverse the order of the court below insofar as it directs the Board to issue warrants to Ludwig for milk supplied by it to Grillo and delivered to the schools.

Wanzer next contends that plaintiffs have failed to make a showing sufficient to support even a preliminary injunction preserving the status

quo. Wanzer asserts that in order to warrant such a decree, plaintiffs must show irreparable injury as well as their likelihood of ultimate success on the merits. In this regard, Wanzer points out that it had a perfected security interest in the contract rights and accounts receivable of Grillo in addition to an assignment of the contract proceeds; that both Grillo and Ludwig had knowledge of the same before entering into their contract; and that the equitable doctrine of unjust enrichment is not applicable to a case properly controlled by the Uniform Commercial Code.

■■ It is true that in order for a preliminary injunction to issue, the parties must establish irreparable injury (*Schlicksup Drug Co., Inc. v. Schlicksup*, 129 Ill.App.2d 181, 262 N.E.2d 713) and likelihood of success on the merits (*House of Vision, Inc. v. Hiyane,* 58 Ill.App.2d 431, 208 N.E.2d 390). However, in order to obtain the writ, a party is not required to make out a case which will in all events warrant relief at the final hearing. All that is necessary is that the petitioning party raise a fair question as to the existence of the right claimed, lead the court to believe that he will probably be entitled to the relief prayed for if the proof should sustain his allegations, and make it appear advisable that the positions of the parties should stay as they are until the court has had an opportunity to consider the case on the merits. (*Frederick Chusid & Co. v. Collins Tuttle & Co.*, 10 Ill.App.3d 818, 295 N.E. 2d 74.) The motion is clearly addressed to the sound discretion of the trial court. *Frederick Chusid & Co. v. Collins Tuttle & Co.*, 10 Ill.App. 3d 818, 295 N.E.2d 74.

■■ In considering the court's order insofar as it enjoined the Board from issuing warrants to Wanzer, we can find no abuse of discretion. Again we must emphasize that the role of an appellate court in reviewing the grant or denial of a preliminary injunction is solely to determine whether the judge abused his broad discretion. In the instant case there are numerous factual questions to be resolved between the parties. Foremost are whether the assignment to Wanzer of Grillo's contract rights was forged; whether the assignment, if valid, was intended to secure antecedent debts or simply to secure credit for milk delivered pursuant to Grillo's contract with the Board; and whether the 1971 security agreement granted Wanzer a security interest in the proceeds of Grillo's 1973 contract with the Board. Upon a thorough review of the record, we find sufficient evidence to suggest that these questions may be determined in favor of plaintiffs. And although the evidence cannot support the issuance of a mandatory preliminary injunction, it adequately demonstrates the advisability of maintaining the status quo until a final trial

on the merits. Therefore, we hold that the court's order of January 14, 1974, was proper insofar as it enjoined the Board from issuing warrants to Wanzer for milk supplied by Ludwig after December 1, 1973.

■■ Finally, plaintiffs contend that if the trial court was correct in ordering that all future payments be made to Ludwig, then the court erred in permitting Wanzer to retain payment for Ludwig milk delivered to the Board in November of 1973. We agree with the trial court that the issue was rendered moot by the issuance, negotiation and payment of the warrant prior to the institution of the instant cause for injunctive relief. Accordingly, we affirm the trial court's decision permitting Wanzer to retain payment for the November milk delivery. We emphasize, however, that the question of who is ultimately entitled to payment for the November milk delivery remains an issue between the parties to be resolved at trial.

For the above reasons we hold that the issuance of the mandatory preliminary injunction ordering the Board to issue all warrants to Ludwig for milk supplied by it to Grillo and resold to the Board after December 1, 1973, constituted an abuse of discretion requiring a reversal. That part of the order enjoining the Board from passing warrants to Wanzer after December 1, 1973, was proper to maintain the status quo. We further hold that the court properly permitted Wanzer to retain payment for the November 1973 milk delivery until a final trial on the merits.

The judgment of the Circuit Court is affirmed in part and reversed in part and remanded to the trial court for further proceedings consistent with this opinion with directions that all sums due Grillo from the Board of Education for milk sold after December 1, 1973, be paid over to the clerk of the Circuit Court of Cook County, Illinois, pending final resolution of the issues in the trial.

Affirmed in part, reversed in part and remanded with directions.

DIERINGER, P. J., and JOHNSON, J., concur.