CHARLES M. DOLAN *et al.*, Plaintiffs-Appellees, *v.* UNITED CABLE TELEVISION CORPORATION, Defendant.—(THE CITY OF BURBANK *et al.*, Defendants-Appellants.)

First District (4th Division)    No. 80-2261

Opinion filed April 9, 1981.—Rehearing denied June 29, 1981.

Edwin A. Strugala, Special Assistant City Counsel, of Chicago, for appellants.

William J. Harte, Ltd., of Chicago (William J. Harte and Richard J. Prendergast, of counsel), for appellees.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The case before us is an interlocutory appeal from a preliminary injunction entered in favor of plaintiffs, Charles M. Dolan and Communications Management Corporation, as general partners in Cablevision of Chicago, a limited partnership, and against United Cable Television Corporation and the city of Burbank, Illinois, together with the members of its city council.

Plaintiffs filed a lawsuit in the circuit court of Cook County seeking to prevent defendants from interfering with plaintiffs' contractual rights to operate a cable television system in the city of Burbank.

The trial court entered a temporary restraining order against defendants pending a full hearing. On July 18, 1980, the court entered its preliminary injunction order. The injunction prohibited defendants from interfering with or terminating plaintiffs' rights under a franchise ordinance adopted by defendant city of Burbank through its aldermen. The issue on appeal is whether the trial court abused its discretion in issuing a preliminary injunction.

We affirm.

Defendant city of Burbank, on March 28, 1979, by unanimous vote of the seven-member city council, adopted ordinance No. 18-8-79 granting a franchise to Cablevision of Chicago (hereafter Cablevision) to erect, maintain, and operate the only cable television system in the community. Plaintiffs accepted the franchise, in writing, by way of a letter directed to the city administrator on March 29, 1979.

Briefly, the cable television system in this case delivers electronic signals by cable from the source of the signals to a subscriber's television. The signal originates at a central transmitter. It is relayed from there to a satellite above the earth. It is transmitted from the satellite to a receiving station in the area of service. From the receiving station, the signal is processed through electronic equipment and transmitted to a substation located in or near a given community. The signal is then processed and delivered to subscribers' homes through coaxial cable.

The city ordinance granting the franchise created the basis of agreement between Cablevision and Burbank. Section 18 of the ordinance became the crucial clause in the conflict which arose between the parties. Section 18 provided that:

"Construction of the system shall commence within thirty days after all required utility company licenses have been obtained by the company and service shall be available to every resident of the city within twelve months thereafter, provided that construction shall begin at a date no later than one year from the acceptance of the franchise."

Cablevision began performing its obligations immediately upon accepting the terms and conditions of the ordinance. The company began negotiating with the utility companies, Illinois Bell Telephone and Commonwealth Edison, in March 1979. They were of great importance in the erection of the system.

The physical process of erecting the system includes "strand-mapping" or the survey of every pole in the community which is to receive service. The strand-mapping is jointly performed by employees of the cable television company and the utility companies. Once it is completed, the utility must be prepaid to do "make-ready" work which is the arrangement of the phone and power wires on the utility poles so that the cable wires can be placed a safe distance between them.

By July 1979, the utility companies had begun the preliminary work for Cablevision. They furnished maps and outlines of the work that was to be done. Strand-mapping and design engineering work was begun in Burbank. As well, Cablevision ordered microwave transmitting equipment. By August 1979, Cablevision had expended approximately $350,000 for strand-mapping and microwave equipment.

During September and October 1979, Cablevision told the utility companies that they needed to acquire certain licensing by February 15, 1980. The deadline was not met after several meetings with the companies. They gave a variety of reasons for the delay. The primary reason given was lack of experienced utility personnel. By April 1980, completed work on the system in Burbank included strand-mapping, make-ready surveys, and make-ready work.

On March 29, 1980, 1 year after acceptance of the franchise, one of the city aldermen, Thomas J. Roach, wrote Cablevision a letter which stated:

"In accordance with that ordinance I am notifying you that the construction schedule in Section 18 appears to be violated."

The letter went on to invite Cablevision representatives to attend a meeting on April 21, 1980, to discuss the matter. Aldermen Roach was unable to attend that meeting, and it was rescheduled to May 7, 1980. The letter also made inquiries into the progress of construction. Cablevision representatives responded to the letter from Alderman Roach and attended the meeting on May 7. Detailed reports were given on the amount of time, work, and money that had been expended in erecting the system

prior to the meeting. Construction was the main topic of discussion. Cablevision was requested to submit monthly written reports on the progress of construction. The representatives agreed to submit such reports. There was no further mention of any violation of the franchise or an intent to declare revocation.

On May 12, 1980, licenses were issued by the utility companies for only 5 of the 14 sections of the target community. Stranding of the coaxial cable could not begin until licenses were issued by the utilities, and licenses could not be issued until all make-ready work had been performed. Cablevision requested permits that were required by city ordinance so that strand wires and cable could be attached to the utility poles. Burbank failed to issue the permits at that time.

On May 14, 1980, the city administrator advised Cablevision that its franchise had been forfeited and revoked by a vote of 6 to 1 of the city council. The revocation was made in the form of an ordinance, No. 12-8-80, which provides in section 1:

"That any and all rights, title, interest and franchise granted to Cablevision of Chicago under ordinance No. 18-8-79 entitled 'An Ordinance Granting a Cable Television Franchise in the City of Burbank to Cablevision of Chicago' passed March 28, 1979, are hereby forfeited and revoked and declared null and void"

and which provides in section 3:

"All ordinances or parts of ordinances in conflict with the provisions of this ordinance are hereby repealed insofar as they conflict herewith."

On June 11, 1980, defendant city of Burbank hired United Cable Television Corporation (hereafter United), defendant, to erect a cable television system in Burbank.

Cablevision filed a complaint for injunctive and other relief against the city of Burbank, its aldermen, and United on June 17, 1980. The complaint was followed by a verified motion for a temporary restraining order and preliminary injunction on June 19, 1980. On that date a temporary restraining order was entered, and on July 18, 1980, following a hearing, the trial court entered its order for a preliminary injunction.

Both plaintiffs and defendants venture arguments as to substantive issues of the case. However, such matters as contract construction, notice and affirmative defenses are not for resolution here. The standard has been established that an appellate court in addressing the grant or refusal of an interlocutory order is restricted to a determination of whether the judge correctly exercised his broad discretionary power. See *Grillo v. Sidney Wanzer & Sons, Inc.* (1975), 26 Ill. App. 3d 1007, 326 N.E.2d 180; *Frederick Chusid & Co. v. Collins Tuttle & Co.* (1973), 10 Ill. App. 3d 818, 295 N.E.2d 74.

The purpose of the preliminary injunction is to preserve the status quo pending the disposition of the case on the merits. (*Edgewater Construction Co. v. Percy Wilson Mortgage & Finance Corp.* (1976), 44 Ill. App. 3d 220, 228, 357 N.E.2d 1307, 1314; *Duval v. Severson* (1973), 15 Ill. App. 3d 634, 640, 304 N.E.2d 747, 752.) In fact, a preliminary injunction should not decide the ultimate issues of the case. See *Lonergan v. Crucible Steel Co. of America* (1967), 37 Ill. 2d 599, 229 N.E.2d 536; *PSL Realty Co. v. Granite Investment Co.* (1976), 42 Ill. App. 3d 697, 356 N.E.2d 605.

■■ This court, in *Grillo v. Sidney Wanzer & Sons, Inc.* (1975), 26 Ill. App. 3d 1007, 326 N.E.2d 180, clearly defined the standard for reviewing preliminary injunctions. In *Grillo*, we said:

"The purpose of an interlocutory, preliminary or temporary injunction is quite clear. Such a decree is granted before a trial on the merits of a case for the purpose of preventing a threatened wrong, or any further perpetration of injury, in order to preserve the status quo with the least injury to the parties concerned. (*John Deere Co. v. Hinrichs*, 36 Ill. App. 2d 255, 183 N.E.2d 309.) It is not the purpose of such an injunction to determine any controverted rights nor to decide the merits of a case. *John Deere Co. v. Hinrichs*, 36 Ill. App. 2d 255, 183 N.E.2d 309.

\* \* \* The status quo has been defined as 'the last, actual, peaceable, uncontested status which preceded the pending controversy.' (*O'Brien v. Matual*, 14 Ill. App. 2d 173, 187, 144 N.E.2d 446, 453.) \* \* \*

\* \* \*

It is true that in order for a preliminary injunction to issue, the parties must establish irreparable injury (*Schlicksup Drug Co., Inc. v. Schlicksup*, 129 Ill. App. 2d 181, 262 N.E.2d 713) and likelihood of success on the merits (*House of Vision, Inc. v. Hiyane*, 58 Ill. App. 2d 431, 208 N.E.2d 390). However, in order to obtain the writ, a party is not required to make out a case which will in all events warrant relief at the final hearing. All that is necessary is that the petitioning party raise a fair question as to the existence of the right claimed, lead the court to believe that he will probably be entitled to the relief prayed for if the proof should sustain his allegations, and make it appear advisable that the positions of the parties should stay as they are until the court has had an opportunity to consider the case on the merits. (*Frederick Chusid & Co. v. Collins Tuttle & Co.*, 10 Ill. App. 3d 818, 295 N.E.2d 74.) The motion is clearly addressed to the sound discretion of the trial court. *Frederick Chusid & Co. v. Collins Tuttle & Co.*, 10 Ill. App.

3d 818, 295 N.E.2d 74." *Grillo*, 26 Ill. App. 3d 1007, 1011-13, 326 N.E.2d 180, 183-85.

■■ Since the trial court is vested with broad discretionary power in granting or refusing a petition for a preliminary injunction, a reviewing court will not set it aside unless there has been an abuse of discretion. *Associates for Oral Surgery, Ltd. v. Associates For Oral & Maxillofacial Surgery, Ltd.* (1976), 39 Ill. App. 3d 73, 77, 350 N.E.2d 109, 112; *Shappert v. Roettger* (1976), 36 Ill. App. 3d 452, 457, 343 N.E.2d 695, 699.

■■ In our review of the record and the preliminary injunction order, we find the trial court did not abuse its discretion. Plaintiffs assert a contractual right has been interfered with by virtue of the revocation ordinance and the engagement of United. The issue of contract construction, along with the issues of notice and affirmative defenses are all legitimate questions which must be answered in order to resolve the case on its merits.

As well, evidence presented at trial indicated that news of Burbank's revocation ordinance was spreading to other communities. The news could have had an unwarranted impact on the reputation of the company.

Finally, Burbank engaged United to replace Cablevision as holder of the cable television franchise in the community. This represented an obvious and immediate change of position for Cablevision in the cable television market of the city of Burbank.

It is apparent from the above that it was necessary to maintain the status quo in the relationship between Burbank and Cablevision. It follows that it was incumbent upon the trial court to do so. Therefore, the decision to issue a preliminary injunction was a proper one.

For the aforesaid reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN and JIGANTI, JJ., concur.